81 Wis.2d 194 (1977)
260 N.W.2d 246
IN MATTER OF Aaron and Alfred Z:
ALLEN, and others, Appellants,
v.
STATE DEPARTMENT OF HEALTH & SOCIAL SERVICES, and others, Respondents.
No. 76-153.
Supreme Court of Wisconsin.
Argued October 3, 1977.
Decided December 13, 1977.
*196 For the appellants there was a brief by Davis, Witkin, Weiby & Maki, S.C. of Superior, and oral argument by Marc Ashley, all of Superior.
For respondent, Department of Health and Social Services, the cause was argued by Ward L. Johnson, assistant attorney general, with whom on the brief were Bronson C. La Follette, attorney general, and Robert Rusch, district attorney of Taylor county.
For respondents Stephen M. Blomgren and Sheila J. Blomgren there was a brief pro se.
HEFFERNAN, J.
In this case two foster children were removed from the home of Charles and Beverly Allen without prior compliance of the State Department of Health and Social Services with the provisions of sec. 48.64(1), Stats., requiring that, when children have been in a foster home for more than six months, a written notice of the intent to remove them shall first be given. In this case, the children were removed from the Allen home after the receipt of an oral notice of removal. They were then placed in an adoptive home. The Allens petitioned for the return of the children, relying on the department's failure to comply with the written notice requirement.
[1]
The trial court found that it was in the best interests of the children to remain in the adoptive home and that it was not in their best interests to be returned to the foster home from which they had been removed. We affirm that order, irrespective of the mandatory language of sec. 48.64(1), Stats., requiring a written notice, because the Children's Code, by legislative directive, must be construed to give paramountcy to the best interests of children. The rights granted to foster parents must, therefore, be subordinated to the interests of the children.
*197 The foster children, Aaron and Alfred Z, were of part American Indian ancestry. The rights of their natural parents had been terminated. Alfred was born on June 12, 1973, and Aaron was born on April 27, 1974. They were placed in the home of Charles and Beverly Allen in Superior, Wisconsin, as foster children on June 14, 1974. At no time prior to the removal of these children from the Allen home did these foster parents indicate a present interest in adopting these children.
The record shows that a number of factors combined to make adoptive placement difficult. The department preferred, if possible, to place the boys together for adoption. Because they were of part American Indian heritage, adopting parents of that ancestry were preferred. In addition, placement for adoption outside of the Superior, Wisconsin, area was preferred, because the natural parents continued to live there. Also, one of the children was believed to suffer from a chromosome imbalance, which, it was thought, would retard normal physical development.
After the children had been in the foster home for almost a year, the caseworker assigned to the inspection and supervision of the Allen home inquired about the Allens' willingness to adopt these children. The Allens stated that they were not then interested.
In February of 1976, the caseworker advised the Allens that potential adoptive parents for the two boys had been found. These adoptive parents were Steven and Sheila Blomgren.
The trial judge in the proceedings now under review found that the Allens had oral notice from the Department of Health and Social Services as early as February 17, 1976, that the Blomgrens had definitely decided to take the children for adoption, and that the children would be removed. After discussions between the Allens and the caseworker, arrangements were made for the *198 Blomgrens to visit the children in the Allen home. They, in fact, visited the children there on March 18, 19, and 20, 1976. After the oral notification, and prior to the visits of the Blomgrens, the Allens prepared a picture scrapbook of the children and mailed it to the Blomgrens. A scrapbook depicting the Blomgrens and their home was mailed to the Z children and the Allens at about the same time.
The caseworker testified that, on February 19, 1976, she spent approximately one hour discussing the prospective Blomgren adoption with the Allens. At no time did the Allens object to the prospective adoption, and in fact they cooperated fully with the arrangements for the removal of the children. On March 20, when the children were taken by the Blomgrens from the Allen home, the Allens assisted in loading the Blomgren vehicle. Although it was obvious that both of the Allens were saddened at the departure of the children, neither of them objected to the removal, and Beverly Allen stated that it was "for the best."
There is no evidence whatsoever to show that the Allen home was not a suitable one for foster child care. The caseworker testified that at all times the Allens furnished a good home for the children and the children appeared to be happy.
It was only after the removal of the children to the Blomgren home that the Allens raised any objection.
The children were removed from the Allen home on Saturday, March 20, 1976. On either Monday or Tuesday of the following week, Beverly Allen called the caseworker and stated that she was sorry that the children were gone and asked if they could be returned. The children were not returned.
On April 12, 1976, the Allens filed a petition in the county court of Taylor county, the county to which the *199 children were taken, demanding a hearing to review the decision of the Department of Health and Social Services to remove the children from the Allen home and asking for the restoration of the children to them. The matter was heard in the county court of Taylor county on May 25 and June 2, 1976; and, by order dated June 22, 1976, the court found that it was in the best interests of the children that they be retained in the Blomgren home and ordered their retention there.
At the hearing the petitioners relied on the fact that the children were removed without the written notice of intent required in sec. 48.64(1), Stats.[1] While secs. 48.64 (4) (a) and (b) provide for an administrative review of a decision of the department in respect to child placement, the Allens elected not to follow that option and, instead, petitioned the county court to take jurisdiction under sec. 48.64(4) (c), which provides:
"(c) The county court of the county where the child is shall have jurisdiction upon petition of any interested party over a child who has been placed in a foster home. *200 The court may call a hearing, at which the foster parents and the supervising agency under sub. (2) shall be present, for the purpose of reviewing any decision or order of said agency involving foster placement and care of the child. The court shall determine the case so as to promote the best interests of the child."
Although the petition addressed to the county court relied upon the failure to give the thirty-day written notice provided for in sec. 48.64(1), Stats., the Allens also alleged that the restoration of the children to the Allens was in the best interests of the children.
On the appeal to this court from the order denying their petition, the petitioners have substantially abandoned the argument that the best interests of the children would be served by the return of the children to the Allens. Rather, they base a modified best-interests-of-the-children argument on the rationale that the interests of the Z children would be served by insuring that their removal from the Allen home could only be accomplished by strict compliance with sec. 48.64(1), Stats., and that their subsequent adoption would not, therefore, be tainted by any possible illegality in the removal proceedings. In addition, they argue that the interests of all foster children as a class will be served by protecting the bonds that form during a lengthy foster home placement and by insuring that those bonds will not be severed without strict compliance with the legislative directive that written notice to foster parents be given. Essentially, however, their argument is framed in the terms of the rights of the foster parents, and they state:
"... if we balance the notice requirement against the `best interests' [of the children] language, there can be no question but that the notice requirement must be viewed as mandatory when the two provisions conflict."
Emphasis is placed by the petitioners upon the intent of the legislature to protect the rights of the foster parent. No attack is made on this appeal upon the trial *201 judge's finding that, in the present circumstances, the best interests of the children would be served by their retention in the Blomgren home.
[2]
While the hearing revealed nothing derogatory about the Allen foster home, the record is replete with evidence that the placement in the adoptive Blomgren home was unusually felicitous. In view of the testimony of numerous witnesses, and on the recommendation of the guardian ad litem,[2] only one conclusion reasonably could be reached, and that is that the retention of the children in the Blomgren home was clearly in the best interests of the Z children.
It was to this issuewhat placement is in the best interests of the child at the time of the hearingto which the trial judge addressed himself.
The trial judge, on being apprised of the fact that the state admitted that no written notice was given to the Allens, stated:
"Assuming that to be a fact, the next question the Court must decide is what effect, if any, does that have on the placement of these children in the Blomgren home. That, in essence, is what the Court has before it to decide today. The last sentence of 48.64[ (4) (c) ] is the sentence the Court is primarily interested in right now. That sentence is, `The Court shall determine the case so as to promote the best interest of the child.' Now, that is what we are concerned with here today."
[3]
The trial judge recognized what we must recognize on this appealthat the removal of the children, whether or not in compliance with the written notice requirements, *202 was an accomplished fact. Under the statutes, given that accomplished fact, the trial judge recognized that the focus of his determination properly could not be on past events but only on the situation as it then existed and as it then concerned the interests of Aaron and Alfred.[3]
[4]
Much of the argument of both the state and the petitioners concerns whether the giving of a written notice is mandatory under the statutes. We hold that it is mandatory. The Department of Health and Social Services, under the statutes, had an absolute duty to inform the Allens by written notice at least thirty days prior to the removal of the intent to remove. This it did not do. The trial judge concluded, however, that the Allens had been given an adequate oral notice, that they were fully apprised of the removal and the reasons therefor, that the notice was timely, that they made no objection, and that they were not prejudiced by the lack of a written notice. In effect, he found that the Allens waived any claim or right to the children.
[5, 6]
While the trial judge makes a cogent argument for concluding that the Allens waived their rights, whether or not there was a waiver in the instant case is largely irrelevant. A waiver of a legal right can only occur when there is precise knowledge of what that legal right is. While it is apparent that the Allens were fully and timely informed of the proposed removal and the reasons therefor, there is nothing in the record to show that they knew they had the right to a written notice or that *203 they knew they had the right to a hearing before the removal of the children. Accordingly, we conclude that the facts here do not show a waiver of the rights of the foster parents. The principal question, howeverwhat to do with the children in light of the facts as they now existis not to be determined by a consideration of what might be the rights of the foster parents under other circumstances.
The standard for determining the appropriateness of the present placement of the children is the over-all standard mandated by the legislature and made applicable to the entire Children's Code and specifically made applicable to these proceedings by sec. 48.64(4) (c), Stats. Undoubtedly, the legislature did intend to confer some rights upon the foster parents to object and be heard before children could be removed from their custody. However, the Children's Code provides in an introductory paragraph, sec. 48.01(2): "It is declared to be the intent of this chapter to promote the best interests of the children of this state...."
Sec. 48.01(3), Stats., recognizes that there may be conflicts between interests protected by the Children's Code. That section of the statute states:
"(3) Construction. This chapter shall be liberally construed to effect the objectives in sub. (2). The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child and the interest of the public." (Emphasis supplied.)
The legislature envisaged that the interests of the children could in some circumstances conflict with the interests of a parent or guardian, but those conflicts are clearly to be resolved, not in favor of the parent or guardian, but in favor of the interests of the children.[4]
*204 Accordingly, we have here a situation contemplated by the legislature as a potential tension between the rights of the parties protected, but the legislature has also told us how this tension must be resolvedin favor of the children's best interests.
The failure of the Department of Health and Social Services to give the proper written notice to the Allens cannot be condoned. It was inexcusable and flies directly in the teeth of the legislative mandate. It is not, however, a jurisdictional defect in any sense.
The neglect of the representatives of the Department of Health and Social Services to give written notice of removal made it impossible for the trial court, or this court on review, to afford the protection to the foster parents that was contemplated by the legislature. Even recognizing, as we do, that the foster parents were not afforded the right to written notice as provided by the statute, we are obliged, pursuant to the directions of the legislature, to subordinate rights of the foster parents to the paramount considerationthe best interests of the children.
Because the trial court, on the basis of overwhelming evidence, found it to be in the best interests of the children to remain in the Blomgren home, we affirm that order.
We do not by so holding conclude that the legislative requirement that a written notice be given is directive only and not mandatory. It is apparent that the legislature intended that there be strict compliance with the written notice requirement. But the attempted vindication of the rights of the foster parents comes too late, not because those rights are unimportant, but because the paramount interestthe best interests of the children has, by legislative pronouncement, supplanted the rights of the foster parents as our area of concern.
*205 Under the facts of this case, had the matter been timely brought to us, this court would have had no hesitancy in issuing the appropriate writ to enjoin or prohibit the removal of the children until proper written notice was given and an opportunity for a hearing was provided. The Department of Health and Social Services should not conclude from this opinion that we in any way condone or sanction the procedure employed here. The trial judge, however, properly resolved the principal question, the custody of the children, by concerning himself primarily with the issue made paramount by the Children's Codewhat is in the best interests of the children.
By the Court.Order affirmed.
NOTES
[1] "48.64 Placement of children in foster homes. (1) Foster home agreement. If the department, a county agency specified in s. 48.56, a juvenile court, or a child welfare agency authorized to do so, places a child in a foster home, it shall enter into a written agreement with the head of such home, which agreement shall provide that the agency shall have access at all times to the child and the home, and that the child will be released to the agency whenever, in the opinion of the agency placing the child or the department, the best interests of the child require it. Where a child has been in the foster home for 6 months or more, the department or agency shall give the foster parents written notice of intent to remove the child, stating the reasons for such removal. The child may not be removed before completion of the hearing under sub. (4) (a), if requested, or 30 days from the receipt of the notice, whichever is later, unless the safety of the child requires it. If a child is removed from an adoptive placement, the foster parents shall have no claim against the placing agency for the expense of care, clothing or medical treatment."
[2] The trial judge appropriately appointed independent counsel to represent the interests of the children. He appeared for them and filed a report recommending Aaron and Alfred remain in the Blomgren home.
[3] The trial judge, in effect, followed the precept stated by Goldstein, Freud and Solnit in Beyond the Best Interests of the Child, "... decisionmakers ... task is to salvage as much as possible out of an unsatisfactory situation," (p. 63) or, as that volume urges, to make the placement choice "least detrimental" to the child from among the then available alternatives. See p. 62.
[4] The language of the Wisconsin legislature in this respect allays the fears of the authors of "Beyond the Best Interests of the Child" that, in all cases, "... laws are made by adults for the protection of adult rights." (P. 106)