Maxine A. BINGENHEIMER, Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES
and Childrens' Services Society of Wisconsin,
Respondents.†

Court of Appeals

*No. 84–1573. Submitted on briefs March 5, 1985.—
Decided April 9, 1985.*
(Also reported in 369 N.W.2d 395.)

For the petitioner-appellant the cause was submitted
on the briefs of *Frisch, Dudek & Slattery, Ltd.*, with
*Patrick B. Howell* of counsel, of Milwaukee.

For the respondents the cause was submitted on the
briefs of *Bronson C. La Follette,* attorney general, with
*Donald P. Johns,* assistant attorney general of counsel,
of Madison.

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported
in a later volume.

Before Wedemeyer, P.J., Moser and Brown, JJ.

MOSER, J. Maxine A. Bingenheimer (Bingenheimer) appeals from a trial court judgment which upheld a determination by the Wisconsin Department of Health and Social Services (Department) that the Department was without jurisdiction to conduct a hearing on the removal of a foster child from Bingenheimer's foster home. We hold that the Department had no jurisdiction to conduct a hearing because the child was removed from the foster home pursuant to sec. 48.357, Stats., which does not provide for a hearing, and that the fair hearing procedures of sec. 48.64, Stats., are inapplicable when a child is removed from a foster home under sec. 48.357. We therefore affirm the trial court's judgment.

R.Q. lived with Bingenheimer from November, 1974, to February 16, 1983, as a foster child. R.Q. was fifteen years old when she was removed from the Bingenheimer home and placed in a new foster home. The Department[1] had determined that an emergency existed necessitating R.Q.'s removal from the home under sec. 48.357 (2), Stats. Specifically, the Department had learned that the teachers at R.Q.'s school felt she was being neglected because she frequently came to school with tangled hair, repeatedly wore the same clothes and smelled of urine. Additionally, Bingenheimer did not follow up on a doctor's direction that R.Q. needed immediate X-rays to ascertain whether she had scoliosis. Also, a psychiatrist who examined R.Q. recommended that she be removed from the home as soon as possible.

Shortly after R.Q.'s removal, the Department orally notified Bingenheimer of its action. The Department also sent a written notice stating the reasons for the

[1] The Department had contracted with the Children's Services Society of Wisconsin to provide services in this instance. We refer to the two agencies simply as the "Department" in the opinion.

removal and notifying Bingenheimer of the opportunity for a hearing. Bingenheimer requested a hearing before the Department which was scheduled for May 3, 1983.

Meanwhile, a separate hearing had been scheduled for February 25, 1983, in Milwaukee County Children's Court to review R.Q.'s guardianship and to revise her dispositional order to reflect her new foster home pursuant to sec. 48.357, Stats. This hearing was held before Judge Michael T. Sullivan who entered an order that R.Q.'s placement with the new foster parents should be continued. Bingenheimer appeared at the hearing and asked to testify as to her treatment of R.Q. in the foster home. Judge Sullivan ruled that Bingenheimer's treatment of R.Q. and the reasons for her removal were not before the court and that, therefore, Bingenheimer could not present evidence to refute the Department's allegations of neglect. The court concluded that it was in R.Q.'s best interests that the dispositional order be revised. This action was taken under sec. 48.357.

Following the entry of the court order, which continued placement of R.Q. in her new foster home, the Department determined that it had no jurisdiction to conduct a hearing on R.Q.'s removal from Bingenheimer's home. Acting on the advice of the Milwaukee county district attorney's office, the Department determined that no administrative hearing was required because the Department acted under the emergency removal provision of sec. 48.357(2), Stats., and that the fair hearing provisions of sec. 48.64, Stats., were never invoked by the Department. The Department concluded that an administrative hearing on R.Q.'s removal could not alter R.Q.'s judicially mandated change of placement. A hearing examiner for the Department dismissed Bingenheimer's request for a hearing. Bingenheimer then sought circuit court review of the hearing examiner's order dismissing her request for an administrative hearing. The court affirmed the hearing examiner's dis-

missal of Bingenheimer's hearing request holding that the Department lacked jurisdiction to conduct a hearing because Judge Sullivan's order had already resolved the matter.

The primary issue on this appeal is whether a foster parent is entitled to a hearing under sec. 48.64(4), Stats., when the Department has removed a foster child under the "emergency conditions" procedure of sec. 48.357(2), Stats. It is undisputed that sec. 48.357 does not provide foster parents with a hearing;[2] thus, if Bingenheimer is entitled to an administrative hearing that right must be found within sec. 48.64(4)(a) which provides in part as follows:

> Any decision or order issued by a division of the department of health and social services, a county welfare department or department of social services, or a child welfare agency affecting the head of a foster or group home or the children involved may be appealed to the department of health and social services under fair hearing procedures established under department rules. The department shall, upon receipt of such petition, give the head of the home reasonable notice and opportunity for a fair hearing.

Bingenheimer argues that because the above section refers to "[a]ny decision" of the Department, it is broad enough to apply to a change of placement under sec. 48.357.

The legislature has provided two avenues for placement changes. The first method, contained in sec. 48.64 (1), Stats., clearly provides its own procedures for removal of foster children and allows for administrative review of removal decisions. Under sec. 48.64, if a child has been in a foster home for six months or more, the Department must give the foster parent written notice

---

[2] Foster parents are not "parties" to children's court proceedings. They are not included in the list of those who are entitled to a hearing in sec. 48.357, Stats.

of intent to remove the child, stating the reasons for the removal. The foster parent may request a hearing on the child's removal and the removal cannot take place until the hearing is completed. Section 48.64(4)(b) provides that the Department's decision following the hearing is subject to judicial review under ch. 227, Stats. The Department contends that it never invoked its power under sec. 48.64; thus, a hearing was not necessary.

The second method by which a child can be removed from a foster home is that utilized in the instant case. Section 48.357(2), Stats., provides in part as follows:

> If emergency conditions necessitate an immediate change in the placement of a child placed outside the home, the person or agency primarily responsible for implementing the dispositional order may remove the child to a new placement, whether or not authorized by the existing dispositional order, without the prior notice provided in sub. (1).

Immediately following the above, sec. 48.357(2m) provides that "any person . . . may request a change in placement under this subsection," and that "[t]his request shall be submitted *to the court.*" [Emphasis added.] Thus, if the child is removed from a foster home under sec. 48.357(2), the Department makes the decision to remove the child due to emergency conditions, actually removes the child and then seeks a court order officially changing the child's placement.

It appears that the legislature has designed two apparently conflicting procedures for the removal of foster children. Section 48.64(4), Stats., provides for departmental administrative review of a change of placement decision while sec. 48.357(2), Stats., provides for change of placement by court order. In this case, Bingenheimer proposes to create a hybrid of the two sections by grafting the fair hearing and administrative review procedures of sec. 48.64(4) onto sec. 48.357(2). We recognize that statutes dealing with the same subject

matter are to be harmonized so that each is given full force and effect[3] and that statutes are not to be construed so as to work absurd or unreasonable results.[4] In all problems of statutory construction, legislative intent is to be derived by giving the language its ordinary and accepted meaning.[5] Additionally, a specific statute controls over a general statute when the two are in conflict; conflicts between different statutes are not favored and will not be held to exist if the statutes may otherwise be reasonably construed.[6]

In this case we hold that the two sections cannot be harmonized and must be read independently. One section is not more specific than the other; both provide separate procedures to remove a child from a foster home. The rule of statutory construction that the specific should prevail over the general does not apply in this instance because the plain language of the two sections reveals that the legislature intended to create two avenues to remove foster children. Here, the Department did not invoke its power under sec. 48.64, Stats; instead it proceeded under sec. 48.357, Stats., and obtained a court ordered change of placement. The issue considered in the hearing before Judge Sullivan was whether R.Q.'s placement in her new foster home was in her best interests. Bingenheimer's alleged neglect of R.Q. was not before the court and the Department's decision to remove R.Q. was not before the court. The sole issue was whether the current placement was in R.Q's best interests. The court determined that it was in R.Q.'s best interests that placement be changed and, once the

---

[3] *Glinski v. Sheldon*, 88 Wis. 2d 509, 519, 276 N.W.2d 815, 820 (1979).

[4] *Cross v. Hebl*, 46 Wis. 2d 356, 361, 174 N.W.2d 737, 739 (1970).

[5] *Transamerica Fin. Corp. v. Department of Revenue*, 56 Wis. 2d 57, 64, 201 N.W.2d 552, 555 (1972).

[6] *State v. Struzik*, 113 Wis. 2d 245, 248, 335 N.W.2d 432, 433 (Ct. App. 1983).

order was entered, administrative review of the Department's removal decision would have been ineffectual and meaningless. If an administrative hearing were conducted under sec. 48.64, the hearing examiner would have had no power to overrule the circuit court order. We agree with the concise conclusion of the trial court:

The rule of law involved is when the State provides an administrative hearing procedure for resolving a dispute and a different statute provides for a judicial hearing to resolve the same dispute completely independent from the administrative hearing procedure, then the results of the judicial hearing preempt the administrative. If there is a dissatisfaction with the result obtained in a juducial [sic] hearing, appeal is an appropriate remedy No recourse is available to the administrative tribunal.

We hold that the Department properly dismissed Bingenheimer's hearing request for lack of jurisdiction.

Bingenheimer argues that *Matter of Z*[7] requires that the notice and hearing procedures of sec. 48.64, Stats., should be given effect. That case, however, dealt with the removal of foster children under sec. 48.64 and did not concern a removal under emergency conditions pursuant to sec. 48.357(2), Stats. The supreme court in *Matter of Z* said that "the Children's Code, by legislative directive, must be construed to give paramountcy to the best interests of children. The rights granted to foster parents must, therefore, be subordinated to the interests of the children."[8] Similarly, in this case, the trial court determined that R.Q.'s continued placement in her new foster home was in her best interests. It is understandable that Bingenheimer wants to explain the allegations of neglect that led to R.Q.'s removal, but sec. 48.357 does not provide for an administrative hearing. We reject Bingenheimer's assertion that *Matter of Z* necessitates a hearing.

*By the Court.*—Judgment affirmed.

[7] 81 Wis. 2d 194, 260 N.W.2d 246 (1977).

[8] *Id.* at 196, 260 N.W.2d at 247.