Maxine A. BINGENHEIMER, Petitioner-
Appellant-Petitioner,

v.

WISCONSIN DEPARTMENT OF HEALTH &
SOCIAL SERVICES and Children's Services
Society of Wisconsin, Respondents.

Supreme Court

*No. 84–1573. Argued January 7, 1986.—Decided April 2,
1986.*

(Also reported in 383 N.W.2d 898.)

For the petitioner there was a brief by *Patrick B. Howell* and *Frisch, Dudek and Slattery, Ltd.,* Milwaukee, and oral argument by *Mr. Howell.*

For the respondents the cause was argued by *Donald P. Johns,* assistant attorney general, with whom on the brief (in court of appeals) was *Bronson C. La Follette,* attorney general.

BABLITCH, J.    We review a published decision of the court of appeals filed on April 9, 1985, affirming the judgment of the circuit court for Milwaukee county, Judge Robert W. Landry.

Maxine A. Bingenheimer (Bingenheimer), a foster parent, appeals this decision, arguing that she is enti-

tled by sec. 48.64(4)(a), Stats., to a hearing before the Wisconsin Department of Health and Social Services (Department) on the decision of a county agency to remove a foster child from her home because she allegedly neglected the child. She asserts that even if the Department hearing examiners have no power to overrule a circuit court order which transferred the child's placement to another foster home, she is entitled to the hearing in order to contest the allegations which formed the basis for the removal of the child. Because we conclude that sec. 48.64(4)(a) entitles a foster parent to a hearing before the Department on decisions which affect the interests of the foster parent even in settings in which the outcome of the hearing will in no way affect the child's placement, we hold that Bingenheimer is entitled to a hearing before the Department to contest the agency's allegations. Accordingly, we reverse.

The sole issue for review is whether the fair hearing procedures of sec. 48.64(4)(a), Stats., are inapplicable when the Department removes a child from a foster home under the "emergency conditions" procedure of sec. 48.357 set forth below.[1] It is uncontested that sec.

---

[1] Section 48.357, Stats., provides, in part:

". . . (1)   The person or agency primarily responsible for implementing the dispositional order may request a change in the placement of the child, whether or not the change requested is authorized in the dispositional order and shall cause written notice to be sent to the child or the child's counsel or guardian ad litem, parent, guardian and legal custodian. . . .

"(2)   If emergency conditions necessitate an immediate change in the placement of a child placed outside the home, the person or agency primarily responsible for implementing the dispositional order may remove the child to a new placement,

48.357 does not provide foster parents with a hearing; thus, if Bingenheimer is entitled to an administrative hearing, her right to a hearing must be found within sec. 48.64(4)(a) which provides, in part, as follows:

> ". . . Any decision or order issued by a division of the department of health and social services, a county welfare department or department of social services, or a child welfare agency affecting the head of a foster or group home or the children involved may be appealed to the department of health and social services under fair hearing procedures established under department rules. The department shall, upon receipt of such petition, give the head of the home reasonable notice and opportunity for a fair hearing."

The relevant facts are undisputed. From November, 1974, until February, 1983, Bingenheimer was a foster parent to R.Q., a minor child, under a license issued by the Milwaukee County Department of Social Services. On February 16, 1983, an agency which administers foster care programs for the county decided that an emergency existed which necessitated removal of R.Q. from Bingenheimer's home. The agency orally notified Bingenheimer that it was removing R.Q. from her home immediately. Several days later Bingenheimer received a written letter from the agency specifying reasons for removal of the child. The letter, which Bingenheimer alleges remains in her file with the agency, made allegations of physical and mental abuse and neglect by Bingenheimer. Dated February 16, 1983, it read:

whether or not authorized by the existing dispositional order, without the prior notice provided in sub. (1)."

"This letter is to inform you of the reasons for removing [R.Q.] from your home.

"[R.Q.'s] teachers at . . . School feel she is being neglected. On numerous occasions she has come to school with her hair tangled, smelling of urine and wearing the same clothes.

"[R.Q.] was accused and punished unjustly for money that was missing and that she had allegedly passed out in school on 1/31/82. You stated on 1/31/82 to this worker that you knew [R.Q.] was guilty as the school had called on the same date and stated that she was passing out money. You specifically stated that Mrs. [A.] phoned you on that date. This worker contacted Mrs. [A.] who stated that she had not contacted you on 1/31 and [R.Q.] had not passed out any money on that date. Mrs. [A.] stated that she in fact had not talked to you since November.

"[R.Q.] was seen by Dr. [G.] on 5/28/82. Dr. [G.] specifically told you that [R.Q.] needed immediate medical attention (x-rays) for possible scoliosis. You informed this worker in December, 1982 that [R.Q.] had had x-rays and there was no scoliosis. We were notified by Dr. [G.] in February, 1982 that you did not follow-up with x-rays during that 8 month period.

"[R.Q.] was seen by Dr. [S.] on 2/9/83. He recommended that [R.Q.] be removed as soon as feasible."

Soon thereafter, Bingenheimer requested a fair hearing, pursuant to sec. 48.64(4)(a), Stats., before the Department.

On February 25, 1983, the circuit court for Milwaukee county, Judge Michael T. Sullivan presiding, conducted a hearing, pursuant to sec. 48.357, Stats., and ordered that the February 16, 1983, placement of R.Q. with new foster parents be continued. At that

hearing, Bingenheimer, having no standing to participate, was not allowed to present evidence to refute the agency's allegations of abuse and neglect.

Subsequently, on August 15, 1983, the Department dismissed Bingenheimer's request for a hearing. The Department concluded that, because the court had changed R.Q.'s placement on February 25, the Department no longer had jurisdiction to review the removal.

In January, 1984, Bingenheimer petitioned the circuit court for review of the Department's order dismissing her hearing. The court affirmed the order, holding that the Department lacked jurisdiction to review the change in R.Q.'s placement. Bingenheimer then appealed to the court of appeals, which affirmed the judgment of the circuit court. *Bingenheimer v. Health & Social Services Dept.,* 124 Wis. 2d 268, 274, 369 N.W. 2d 395 (Ct. App. 1985). The court of appeals agreed with the circuit court that once the circuit court had ordered a change of placement, administrative review of the Department's removal decision would have been "ineffective and meaningless." *Bingenheimer* at 274. Bingenheimer petitioned this court for review of the decision of the court of appeals. We granted the review.

Bingenheimer argues that, because sec. 48.64(4)(a), Stats., refers to "[a]ny decision" of the Department or an agency "affecting" the head of a foster home, the hearing right it establishes is broad enough to apply in the context of a change of placement under sec. 48.357. She maintains that sec. 48.64(4)(a) entitles her to a hearing before the Department on the agency's allegations of neglect, notwithstanding the circuit court's order continuing R.Q.'s placement in another foster home. She does not dispute the Department's contention that a sec. 48.64(4)(a) hearing will not affect R.Q.'s

new placement even if the Department concludes that the county agency erroneously determined that she neglected R.Q., and, accordingly, we do not decide that issue.

To determine whether Bingenheimer is entitled to a hearing before the Department on the agency's allegations that she neglected needs of her foster child, we must interpret parts of sec. 48.64, Stats., in conjunction with sec. 48.357. In this case the legally relevant facts are undisputed. Interpretation of statutes in relation to a set of undisputed facts is a question of law which this court may review without deference to the lower courts. *Manor v. Hanson,* 123 Wis. 2d 524, 533, 368 N.W. 2d 41 (1985).

It is apparent that both the court of appeals and the circuit court concluded that the sole purpose of a sec. 48.64(4)(a), Stats., fair hearing was to determine whether R.Q. should be returned to the Bingenheimer home. Characterizing a sec. 48.64(4)(a) hearing before the Department as "ineffectual and meaningless" after the court's change in R.Q.'s placement, the court of appeals referred to the fact that a Department hearing examiner has no authority to stay or to overrule a circuit court's placement order. *Id.* In this respect, the court of appeals correctly states the law. However, nowhere in sec. 48.64, nor in the administrative rules which supplement sec. 48.64 is the return of the foster child to the foster home identified as the *sole* purpose for a fair hearing, as the lower courts assume. Rather, at the time of Bingenheimer's request for a hearing, the administrative rules of the Department for fair hearings stated six purposes for hearings, which included:

"(b) To enable the county and claimants, jointly, to ascertain the factual basis on which, through proper application of the law and agency policy, a just decision may be reached.

"(c) To contribute to uniformity in the application of the law and policy by assuring that every claimant is fully informed of his rights, that hearings on any grievance are readily available, and that instances of inequitable treatment are speedily remedied by prompt execution of hearing decisions.

"(d) To safeguard claimants from mistaken, negligent, unreasonable or arbitrary action." Wis. Admin. Code, PW-Cy 40.65(3) (1975).

Furthermore, a sec. 48.64(4)(a), Stats., hearing does not always prevent removal of a child from a foster home prior to the completion of the hearing, as the court of appeals and circuit court also seem to assume. To the contrary, while sec. 48.64(1) provides that the Department shall not remove a child from a home before completion of a fair hearing or until 30 days from the foster parent's receipt of notice of a proposed removal, the section specifically permits earlier removal if ". . . the safety of the child requires it."

To resolve whether a sec. 48.64(4)(a), Stats., hearing is obviated by emergency removal procedures under sec. 48.357, we must construe relevant parts of sec. 48.64, granting foster parents a hearing on "decisions or orders" of the Department which affect them as foster parents, in conjunction with sec. 48.357, which authorizes emergency removal of foster children without a hearing for foster parents. When confronted with an apparent conflict between statutes, we construe sections on the same subject matter to harmonize the provisions and to give each full force and effect.

*Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W. 2d 815 (1979). We will not construe statutes so as to work unreasonable results. *Cross v. Hebl,* 46 Wis. 2d 356, 361, 174 N.W. 2d 737 (1970). In all problems of statutory construction, we derive legislative intent by giving language its ordinary and accepted meaning. *Transamerica Financial Corp. v. Dept. of Revenue,* 56 Wis. 2d 57, 64, 201 N.W. 2d 552 (1972).

The court of appeals correctly points out that the legislature has provided two procedures through which the Department may change the placement of foster children. *Bingenheimer* at 271. As the court states:

> ". . . The first method, contained in sec. 48.64(1), Stats., clearly provides its own procedures for removal of foster children and allows for administrative review of removal decisions. Under sec. 48.64, if a child has been in a foster home for six months or more, the Department must give the foster parent written notice of intent to remove the child, stating the reasons for the removal. The foster parent may request a hearing on the child's removal. . . .

> "The second method by which a child can be removed from a foster home is that utilized in the instant case. Section 48.357(2), Stats., provides in part as follows:

> "If emergency conditions necessitate an immediate change in the placement of a child placed outside the home, the person or agency primarily responsible for implementing the dispositional order may remove the child to a new placement, whether or not authorized by the existing dispositional order, without the prior notice provided in sub. (1).

> "Immediately following the above, sec. 48.357(2m) provides that 'any person . . . may request a change in placement under this subsection,'

and that '[t]his request shall be submitted *to the court.'* [Emphasis added.] Thus, if the child is removed from a foster home under sec. 48.357(2), the Department makes the decision to remove the child due to emergency conditions, actually removes the child and then seeks a court order officially changing the child's placement." *Bingenheimer* at 271–72.

In addition, the procedures have different effects on removal decisions. Specifically, sec. 48.64, Stats., permits a hearing to stay a removal pending its completion, unless the safety of the child requires earlier removal, while sec. 48.357(2) authorizes the circuit court to approve emergency removals without granting a foster parent any hearing whatsoever.

We conclude that the hearing provision in sec. 48.64(4)(a), Stats., may be harmonized with the court procedure in sec. 48.357 in a manner which gives full force and effect to both sections. We recognize that all decisions to remove a child from a foster home arguably have some effect on interests of the foster parent. We also recognize that the legislature has mandated throughout the Children's Code that, when the interest of the child conflicts with the interest of the foster parent, the interest of the child is paramount. *See, In Matter of Z,* 81 Wis. 2d 194, 203, 260 N.W. 2d 246 (1977). Accordingly, the legislature in sec. 48.64(4)(a) has permitted foster parents who have a longstanding relationship with a child to delay removal of the child from the home *in nonemergency situations* pending the outcome of a hearing; at the same time it has provided in sec. 48.357 that emergency conditions overcome the right of a foster parent to receive a hearing on a child's removal and in sec. 48.64(1) that "safety" reasons may

preclude a fair hearing from staying a removal. Nothing in this statutory scheme requires the result which the Department urges, namely that invocation of the emergency removal procedure deprive the foster parent of the right to a fair hearing for a purpose other than reversing the removal decision.

We harmonize these sections by construing sec. 48.64(4)(a), Stats., to entitle a foster parent to a fair hearing on proper request when a removal decision affects the person as the head of a foster home. We construe sec. 48.357 as a limit on the scope of such hearings. Accordingly, in respect to emergency removals, the foster parent is entitled to a hearing which is restricted to issues affecting the person as head of a foster home. The hearing might result in a decision to expunge the foster parent's file of erroneous or unsubstantiated materials related to the removal decision or it might produce factual findings relevant to future licensing of the parent. Because the purpose of the hearing is to protect the foster parent's interests only, when the emergency procedures of sec. 48.357 have been invoked, the hearing would have no effect on the change in the child's placement. In this case, for example, Bingenheimer could dispute the allegations of the county agency that she neglected the needs of R.Q., in order to clear her name, protecting her interest in equitable treatment and in defending against mistaken, negligent, unreasonable or arbitrary agency allegations, but she could not argue the merits of returning R.Q. to her home.

There is no dispute that the decision of the county agency to remove R.Q. from Bingenheimer's home was a "decision" which "affected" Bingenheimer as the head

of a foster home. As she argues, having an erroneous explanation for the removal decision in her file may prejudice foster care workers against her, may prevent her from qualifying for licenses to care for additional foster children and may unfairly deprive her of payments for providing foster care. The statute, as well as simple justice, dictates that she be allowed an opportunity to clear her name.

For these reasons, we hold that sec. 48.64(4)(a), Stats., entitles Bingenheimer to a hearing before the Department in regard to her interests as a foster parent and a decision from the Department on the county agency's allegations that she neglected needs of her foster child.

*By the Court.*—The decision of the court of appeals is reversed. The case is remanded to the circuit court for entry of an order consistent with this opinion.