STATE of Wisconsin, Plaintiff-Respondent,
v.

Denise L. HAGAMAN, Defendant-Appellant.

Court of Appeals

*No. 86–0815. Submitted on briefs July 28, 1986.—Decided
September 16, 1986.*

(Also reported in 395 N.W.2d 617.)

For defendant-appellant, Denise Hagaman, there were briefs filed by *Frederic E. Hatch*, of St. Germain.

For plaintiff-respondent, State of Wisconsin, there was a brief filed by *R. Terry Hoyt*, of Eagle River.

Before Cane, P.J., LaRocque and Myse, JJ.[1]

LaROCQUE, J. Denise Hagaman appeals an order revoking her driving privileges for six months for improperly refusing to submit to a chemical test after an OWI arrest. She claims that she was denied due process because the trial court had a predisposition to deny her claim. She also claims that she was unable to take the test due to a mental disorder. The due process claim is without foundation in the record and is summarily denied. Because Hagaman did not lack knowledge or perception of her acts and surroundings, she was capable of a conscious refusal to take the test within the

---

[1] This case is decided by a three-judge panel pursuant to sec. 809.41(3), Stats., by order of the chief judge.

meaning of sec. 343.305(2)(c), Stats., and she did not refuse due to a physical disability unrelated to intoxicants, sec. 343.305(3)(b)5.d. We therefore affirm.

■■

Hagaman, arrested for OWI and taken to the Vilas County Sheriff's Department, refused to take an intoxilyzer test. At the hearing to determine the basis of her refusal, she produced a clinical psychologist who attributed her behavior, at least partially, to a mental disorder. The trial court, in imposing the penalty for improper refusal, concluded that her mental condition was irrelevant because only a physical disability unrelated to intoxicants excuses a refusal. We agree that a mental condition cannot serve as a basis for properly refusing a chemical test. The mental disorder is relevant to the refusal issue, however, because if severe enough, that person is deemed not to have refused at all under subsec. (2)(c). In that situation, an officer may proceed to administer the test or tests because consent is presumed not to be withdrawn. In this case, we conclude that Hagaman's mental condition did not reach the necessary level of severity to invoke the provisions of subsec. (2)(c).

Section 343.305 deals with refusal to submit to chemical tests. Section 343.305(3)(b)5.d. says "[t]he person shall be deemed not to have refused the test if it is shown by a preponderance of evidence that the refusal was due to a physical inability to submit to the test due to a physical disability or disease unrelated to the use of alcohol, controlled substances or other drugs." Section 343.305(2)(c) says "[a] person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent . . . and . . . one or more tests may be administered to the person."

An appellate court is not bound by a trial court's ultimate conclusions of law but decides the matter de novo. *Green Scapular Crusade, Inc. v. Town of Palmyra*, 118 Wis.2d 135, 138, 345 N.W.2d 523, 525 (Ct. App. 1984). Although the subsections of sec. 345.305 do not fit together well, *State v. Disch*, 129 Wis.2d 225, 232, 385 N.W.2d 140, 143 (1986), statutes dealing with the same subject matter are to be harmonized so that each is given full force and effect. *Bingenheimer v. Department of Health & Social Services*, 124 Wis.2d 268, 272-73, 369 N.W.2d 395, 398 (Ct. App. 1985), *rev'd on other grounds*, 129 Wis.2d 100, 383 N.W.2d 898 (1986).

The phrase "otherwise not capable of withdrawing consent" in subsec. (2)(c) is a legal standard that apparently describes a person who has conscious awareness and can respond to sensory stimuli but lacks present knowledge or perception of his or her acts or surroundings. *Disch*, 129 Wis.2d at 234-35, 385 N.W.2d at 144. A person suffering from a mental disorder and who meets this standard should not be deemed to have refused the test, but rather may be tested under the provisions of subsec. (2)(c).[2] In this case, if Hagaman met this standard, then the lack of a test was not attributable to her refusal, but rather to the officer's failure to procure one as directed by statute.[3]

---

[2] We recognize the potential problems for law enforcement. An officer may have great difficulty distinguishing a mental disorder from intoxication. A claim of mental disability should occur infrequently, however, because it subjects the person to a potential loss of license under sec. 343.06(7), Stats. (persons not to be licensed).

[3] Because no tests were taken, we need not deal with the constitutional questions raised by forcible extraction of evidence from the

 Whether the facts of a case fulfill a particular legal standard is a question of law. *Nottelson v. DILHR*, 94 Wis.2d 106, 116, 287 N.W.2d 763, 768 (1980). We conclude that the record fails to establish that Hagaman lacked knowledge or perception of her acts and surroundings necessary to escape a penalty. She recalled in detail the chain of events from arrest through jailing. She knew, for example, that she was arrested for OWI and that a breath test was required. She recalled that a physican came to examine her. She knew that he wanted to take her pulse and check her eyes. She refused to let him "do whatever it was he was going to do ... I just ignored him."

Based upon her own description of events, her state of mind, as a matter of law, did not meet the test of incapacitation described in sec. 343.305(2)(c). While the trial court did not make findings of fact as to the credibility of the psychological diagnosis, it was unnecessary in view of Hagaman's testimony. Even assuming that she suffered from the disorder described, she possessed adequate mental capacity to appreciate her responsibility.

*By the Court.*—Order affirmed.

person. *See Rochin v. California*, 342 U.S. 165 (1952); *cf. Breithaupt v. Abram*, 352 U.S. 432 (1957) (blood withdrawn by a physician from an unconscious suspect).