WISCONSIN BINGO SUPPLY & EQUIPMENT COMPANY, INC.,
Petitioner-Appellant, v. WISCONSIN BINGO CONTROL
BOARD, Respondent.

Supreme Court

*No. 76–428. Argued February 27, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 716.)

For the appellant there was a brief by *Robert J. Beaudry* and oral argument by *James A. Beaudry,* both of West Allis.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Frederick J. Erhardt,*

assistant attorney general, and oral argument by *James C. McKay, Jr.,* assistant attorney general.

CONNOR T. HANSEN, J.   Pursuant to the provisions of sections 163.21 and 163.22, Stats., the appellant filed an application for a bingo supplier's license with the Wisconsin Bingo Control Board on June 26, 1974. This application was denied pursuant to sec. 163.27 (2) and (4), which provides:

"163.27 **Persons not eligible for supplier's license.** The following persons shall not be eligible for a supplier's license:

"(1) A person convicted of a felony who has not received a pardon or has not been released from parole or probation for at least 5 years.

"(2) A person who is or has been a professional gambler or gambling promoter or who is not of good moral character as defined in s. 139.34.

"(3) A public officer or employe.

"(4) A business in which a person disqualified under sub. (1), (2) or (3) is employed or active or in which a person is married or related in the first degree of kinship to such person who has an interest of more than 10% in the business."

Ned E. Torti, Jr., is the president of the appellant corporation and fifty percent shareholder. His father, Ned E. Torti, Sr., is vice-president of the corporation and owns the remaining fifty percent of the capital stock.

At the hearing before the Board on November 20, 1974, the parties stipulated that the only issue was whether Ned E. Torti, Sr., was a gambling promoter. Following the hearing the Board denied the application for a bingo supplier's license. On a chapter 227 review, the circuit court affirmed the determination of the Board and this appeal follows.

At the hearing, Ned E. Torti, Sr., testified that his family began a novelty store business in 1919 and that

he became a partner in the business in the late 1930's or early 1940's. The business is now known as Wisconsin Deluxe Premium & Novelty, Inc., and he has been the president and general manager of this family corporation for about ten years. He admitted they rented roulette wheels and chuck-a-luck cages and sold play money to churches and other organizations for Las Vegas nights; that they sold small, toy versions of roulette wheels and might have sold some of the larger type that they rented. He also admitted that prior to a 1951 raid by law enforcement officers, they sold punch boards, number jars and tip tickets, but said they discontinued such sales after the raid.

He also testified they no longer stocked tip tickets here in Wisconsin but would order them from an out-of-state supplier and have them shipped directly to the customer. The customer would pay his company for the tip tickets. He said he understood it was illegal to have tip tickets on the premises, but thought it was permissible to sell them in this manner. He said the sale of such tip tickets represented but a small portion of the total gross sales of Wisconsin Deluxe Premium & Novelty, Inc.

Richard R. Puchter, of the criminal investigation division of the state department of justice, testified that he and another agent drove to Wisconsin Deluxe Premium & Novelty, Inc., on May 1, 1972. His partner went into the place of business, purchased and paid for some tip tickets. They both returned on June 26, 1972, to purchase some more tip tickets and both went into the place of business and approached an employee who told them " 'We don't sell those here[.]' " Puchter then told the employee they had previously purchased tip tickets there. The employee found the file under the name of Tom Nelson and acknowledged a previous sale of single tip tickets instead of "Big Seven Dixie Special" which he now wanted to order. At this point, Torti

entered into the conversation and finally instructed the employee to " 'Go ahead and order for them.' " At the suggestion of Torti he ordered two boxes of the tip tickets because he was told he could save by ordering in a larger quantity and when asked how much he could expect selling these tip tickets, Torti stated approximately $140.

The tip tickets were ultimately delivered to Puchter at his residence address by United Parcel Service. He received a statement for the tip tickets in the amount of $23.78 from Wisconsin Deluxe Premium & Novelty, Inc., and paid it by check. The invoice, cancelled check and one of the tip tickets were admitted into evidence. Torti testified the tip ticket was not similar to the ones he had ordered and that he had never seen one used and didn't know how to use it.

Puchter further testified that in late August, 1972, he returned and ordered another box of tip tickets. He told the same employee who had waited on him in July that he needed the tip tickets in a hurry and would like to have them ordered by telephone. This was done with the understanding that Puchter would pay for the telephone call, which he did. On this occasion, Torti entered into the conversation and inquired as to what the tip tickets were being used for. Upon being told that a relative of Puchter's was using them at his bar, Torti replied, " 'Don't you know they're illegal? . . . You can lose your license.' "

The next day a search warrant was executed at Wisconsin Deluxe Premium & Novelty, Inc., and twelve craps or dice layouts, six roulette wheels, five chuck-a-luck cages, five paddling wheels and some records were seized.

Milwaukee county circuit court records were introduced in evidence which reflect that on October 6, 1972, Ned E. Torti, Sr., was arrested for dealing in gambling devices (party to a crime). After a preliminary exam-

ination at which he was bound over for trial and requested a jury trial, the case was ultimately disposed of by a negotiated plea. The complaint was amended to name Wisconsin Deluxe Premium & Novelty Co. as defendant, a plea of no contest was entered to a misdemeanor gambling charge contrary to sec. 945.02(3), Stats., and the defendant was fined $100.

On the basis of this record the Board made the following findings of fact: That Ned E. Torti, Sr., sold tip tickets to an agent of the Wisconsin Department of Justice for valuable consideration at a business establishment known as Wisconsin Deluxe Premium & Novelty, Inc.; that the company was fined $100 for possession of gambling devices; that at all times material thereto, Ned E. Torti, Sr., was the principal officer and managing agent of Wisconsin Deluxe Premium & Novelty, Inc.; that Ned E. Torti, Sr., was vice-president and fifty percent owner of Wisconsin Bingo Supply & Equipment Company, Inc.; that over the past five years Wisconsin Deluxe Premium & Novelty, Inc., has sold and leased gambling devices for profit in the state.

On the basis of these findings the Board concluded that Wisconsin Deluxe Premium & Novelty and Ned E. Torti, Sr., had been engaged in the promotion of gambling and that Wisconsin Bingo Supply & Equipment Company was therefore not eligible for a bingo supplier's license.

On this appeal the appellant challenges the judgment on the following grounds:

1. Sec. 163.27, Stats., is unconstitutional because it is vague, it is a bill of attainder, an ex post facto law and a retrospective law and it violates the equal protection clause.

2. The evidence is insufficient to support the Board's conclusion that the appellant and Ned E. Torti, Sr., have been gambling promoters.

*CONSTITUTIONALITY.*

In challenging this statute the appellant has the burden of overcoming the presumption of constitutionality by demonstrating the statute's unconstitutionality beyond a reasonable doubt. This court will indulge in every presumption to sustain the statute. *State ex rel. Hammermill Paper Co. v. LaPlante,* 58 Wis.2d 32, 46, 47, 205 N.W.2d 784 (1973).

Appellant contends sec. 163.27, Stats., is void because the term "gambling promoter" has not been and cannot be defined with any definiteness and certainty and the statute is therefore unconstitutionally vague. The Board denied the corporation's license application under subsection (4) because Ned E. Torti, Sr., was found to be a gambling promoter under subsection (2).

This court set forth the following guidelines when considering constitutional attacks on a civil statute for vagueness:

" 'A statute is not necessarily void merely because it is vague, indefinite, or uncertain, or contains terms not susceptible of exact meaning, or is stated in general terms, or prescribes a general course of conduct, or does not prescribe precise boundaries, or is imperfect in its details, or contains errors or omissions, or because the intention of the legislature might have been expressed in plainer terms, and questions may arise as to its applicability, and opinions may differ in respect of what falls within its terms, or because the statute is difficult to execute.'

"Unless a statute is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty, it is valid. . . . ." *Forest Home Dodge, Inc. v. Karns,* 29 Wis.2d 78, 94, 138 N.W.2d 214 (1965).

*See also: Moedern v. McGinnis,* 70 Wis.2d 1056, 1073, 1074, 236 N.W.2d 240 (1975) ; *Williams v. Hofmann,* 66 Wis.2d 145, 152, 153, 223 N.W.2d 844 (1974).

The statute on its face appears to be a proper exercise of the police power and is presumptively constitutional.

Appellant also cites standards relating to criminal statutes and contends such standards apply here because the conduct charged amounts to criminal conduct. However, the licensing provisions of chapter 163 are not criminal statutes. This court observed this distinction in *State v. Coubal,* 248 Wis. 247, 21 N.W.2d 381 (1946), where the appellant's liquor license was revoked for having gambling devices on his premises:

". . . [T]he proceeding is 'nothing more than an inquiry into and determination of the question, whether the party licensed continues to be a suitable and proper person to sell intoxicating liquors, the statute itself determining that a violator . . . is not such a person.' . . ." *Id.* at 262.

". . . We are not concerned with a statute which prohibits the doing of an act otherwise lawful in such vague and indefinite terms as to make it impossible for a person of common understanding to know when he has done the prohibited act." *Id.* at 263.

In construing statutes this court has repeatedly acknowledged the importance of the legislature's stated purpose. *Milwaukee County v. ILHR Dept.,* 80 Wis.2d 445, 451, 259 N.W.2d 118 (1977); *In Matter of Estate of Walker,* 75 Wis.2d 93, 103, 248 N.W.2d 410 (1977); *State ex rel. Harvey v. Morgan,* 30 Wis.2d 1, 10, 139 N.W.2d 585 (1966).

"In construing a statute, the primary source used is the language of the statute itself. . . When a statute is ambiguous, it is permissible to look to the legislative intent, which is to be found in the language of the statute in relation to its scope, history, context, subject matter, and object intended to be accomplished. . . A statute is ambiguous if, looking at the language of the statute, a well informed person could have become

confused. . . ." *Wisconsin Environmental Decade v. Public Service Comm.*, 81 Wis.2d 344, 350, 260 N.W.2d 712 (1978).

Nontechnical words may be defined using an accepted dictionary definition. *Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 123, 248 N.W.2d 885 (1977). Statutes on the same subject matter as the challenged statute may also be considered. *Forest Home Dodge, supra,* at 85.

The legislative purpose behind chapter 163 is set forth in sec. 163.02, Stats.:

"163.02 **Purpose.** The purpose of this chapter is to implement section 24 of Article IV of the state constitution, as amended by vote of the people at the general election in April, 1973. The legislature hereby declares that:

"(1) All phases of the conduct of bingo, except bingo games using free cards and donated prizes for which no payment of consideration is made by participants, should be closely controlled by appropriate laws and rules which should be strictly and uniformly enforced throughout this state.

"(2) The conduct of bingo and all attendant activities, except bingo games using free cards and donated prizes for which no payment of consideration is made by participants, should be so regulated as to discourage commercialization of bingo in all its forms, including the rental of commercial premises for bingo, and to ensure the maximum use of the profits of bingo exclusively for the lawful purposes specified in this chapter.

"(3) It is a matter of statewide concern to foster and support such lawful purposes and to prevent commercialized gambling, participation by criminal and other undesirable elements and diversion of funds from the lawful purposes herein authorized."

The term "promoter" has been defined using the following definition from Black's Law Dictionary (rev. 4th ed. 1968), "a person who promotes, urges on, encourages, incites, advances, etc.' " *HM Distributors of*

*Milwaukee v. Dept. of Agri.*, 55 Wis.2d 261, 269, 198 N.W.2d 598 (1972).

Sec. 163.03(6m), Stats., the definition section of chapter 163, expressly refers to sec. 945.01(4)(a), for its definition of a "gambling place." By specifically prohibiting both commercial gambling and gambling promoters from obtaining bingo supplier licenses the legislature clearly intends to bar not only those actively engaged in commercial gambling from obtaining licenses, but also those who facilitated such gambling by promoting it with the sale and lease of equipment necessary to carry it on.

■

Based upon the record before us there is substantial evidence to support the findings and conclusions of the Board that Ned E. Torti, Sr., was a gambling promoter. When one is engaged in the commercial sale and lease of gambling devices which are illegal in Wisconsin, he is fostering gambling activities and is a gambling promoter.[1]

■

The reference to chapter 945 Stats., and the declaration of legislative intent and purpose as contained in chapter 163 provide the Bingo Control Board with guidelines to apply the term gambling promoter with sufficient definiteness to satisfy the constitutional requirements of due process.

Appellant next contends sec. 163.27, Stats., is a bill of attainder or ex post facto law.

■

A bill of attainder is a legislative act which inflicts punishment without a judicial trial. *Christie v. Lueth,* 265 Wis. 326, 330, 61 N.W.2d 338 (1953).

■

An ex post facto law is one which imposes a punishment for an act which was not punishable at the time

---

[1] Secs. 945.03, 945.04, 945.05, Stats.

it was committed or imposes an additional punishment to that then prescribed. *State ex rel. Mueller v. Powers,* 64 Wis.2d 643, 645, 646, 221 N.W.2d 692 (1974).

These constitutional provisions apply only to statutes which impose penalties. Where the disability is imposed to accomplish some other legitimate governmental purpose these doctrines do not apply. *Trop v. Dulles,* 356 U.S. 86, 96 (1958). In *De Veau v. Braisted,* 363 U.S. 144 (1960), the Supreme Court said at 158–160:

"Barring convicted felons from certain employments is a familiar legislative device to insure against corruption in specified, vital areas. . . State provisions disqualifying convicted felons from certain employments important to the public interest also have a long history. . . .

"Finally, §8 of the Waterfront Commission Act is neither a bill of attainder nor an *ex post facto law.* . . The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession. . . ."

Appellant is not being punished here. It is merely being denied a license because it does not qualify under the standards established by the legislature in the valid exercise of its police power to regulate the issuance of bingo suppliers' licenses. This court has held that statutes which set up qualifications for obtaining a license for a particular trade or profession are not ex post facto laws. *Price v. State,* 168 Wis. 603, 611, 612, 171 N.W. 77 (1919) ; *State v. Schaeffer,* 129 Wis. 459, 466, 467, 109 N.W. 522 (1906).

Appellant also challenges sec. 163.27, Stats., as a retrospective law. This doctrine is applicable to civil statutes which adversely affect vested rights. A retrospective statute is unconstitutional if its effect is to deprive a person of life, liberty or property without due process of law. *Schultz v. Vick,* 10 Wis.2d 171, 175, 102 N.W.2d 272 (1960).

Appellant does not point to any vested rights that have been affected by sec. 163.27, Stats. Clearly it had no right to supply bingo equipment prior to the statute's enactment since such conduct would have been illegal before chapter 163 was enacted. This court has said:

" '. . . a statute does not operate retroactively merely because it relates to antecedent events, or because part of the requisites of its action is drawn from time antecedent to its passing, but is retroactive only when it is applied to rights acquired prior to its enactment.' . . ." *Metro. Sew. Dist. v. Chicago, M., St. P. & P. RR,* 69 Wis.2d 387, 409, 230 N.W.2d 651 (1975).

Appellant next contends that sec. 163.27, Stats., denies it equal protection. This argument is based on subsection (1) of sec. 163.27, which prohibits a convicted felon from obtaining a supplier's license for five years after his release from parole or probation. Appellant erroneously concludes that an applicant that had been convicted of a gambling offense would be subject only to this five-year limit and not to the unlimited bar of subsection (2). However, applicants who have been convicted of gambling-related offenses could be denied licenses under subsection (2) even more than five years after their release.

The equal protection issue actually posed relates to the reasonableness of permanently barring commercial gamblers and gambling promoters, whether convicted or not, while limiting the disability of all other convicted felons to five years.

In the absence of a suspect class or fundamental interest this court will sustain the statutory classification unless it is without rational relationship to a legitimate governmental interest. *Warshafsky v. The Journal Co.,* 63 Wis.2d 130, 137, 216 N.W.2d 197 (1974). Where, as here, the classification has been made by the legislature in the exercise of its police power to require licenses, this court has said:

"... '... a state may make any reasonable classification which it deems necessary to the police purpose intended to be attained by the legislation. ...' ... 'the legislature may, without denial of equal protection of the laws, classify businesses and occupations for purposes of regulation, provide different rules for different classes, limit a regulation to a particular kind of business, extend to some persons privileges denied to others, or impose restrictions on some but not on others, where the classification or discrimination is based on real differences in the subject matter and where the classification or the discrimination is reasonable, and the legislation affects alike all persons pursuing the same business under the same conditions.' ...

"The discretion of the legislature in making these classifications is great. The court is not required under the law to find a proper basis of classification, but the classification made by the legislature is presumed to be valid unless the court can say no state of facts can reasonably be conceived that would sustain it.

" . . .

"The burden of proof is on the defendant to show that no basis exists for the classification made by the legislature . . ." *State ex rel. Real Est. Exam. Bd. v. Gerhardt,* 39 Wis.2d 701, 709–711, 159 N.W.2d 622 (1968).

Appellant has not attempted to show that these two classes are not substantially distinct. Conviction of a felony does not in itself imply a connection to gambling interests and would not suggest the need for a permanent

ban. However, commercial gambling interests are explicitly mentioned in the legislative purpose as those that are to be kept out of legalized bingo. The need for a permanent ban of that classification is indicated. The classification is supported by the legislature's stated public interest.

## SUFFICIENCY OF THE EVIDENCE.

The scope of this court's review of the Board's findings of fact is the same as that of the circuit court's, whether those findings are supported by substantial evidence in the record. Sec. 227.20 (6), Stats.; *Vivian v. Examining Board of Architects,* 61 Wis.2d 627, 632, 213 N.W.2d 359 (1974). As the circuit court stated in its decision in this case, the Board's findings of fact are virtually undisputed. The only question is whether, based on these findings, one can reasonably conclude that Torti was a gambling promoter.

Where material facts are not in dispute and the only question is one of law, this court may substitute its judgment for that of the agency. Sec. 227.20 (5), Stats.; *Hall Chevrolet Co., Inc. v. Dept. of Revenue,* 81 Wis.2d 477, 483, 260 N.W.2d 706 (1978). The construction of a statute is a question of law. *Milwaukee County v. ILHR Dept.,* 80 Wis.2d 448, 455, 259 N.W.2d 118 (1977).

Appellant contends the evidence is insufficient to support the Board's conclusion, first, because the Board may have found that Torti violated sec. 945.05, dealing in gambling devices, and used that as a conclusive presumption that he was a gambling promoter. Appellant contends that before the statute could be used for such a purpose the Board would have to show that the possession of gambling devices was for an illegal purpose.

Appellant also finds the evidence insufficient because it does not show that it helped gambling in some particular way on some particular date.

The Board's conclusion that Torti was a gambling promoter was based on the findings that he or his corporation sold tip tickets, had been fined for the possession of gambling devices and sold and leased gambling devices for profit. These findings are supported by the evidence set out above. The Board did not attempt to convict appellant of a violation of sec. 945.05, Stats., nor did it apply and irrebuttable presumption that a conviction under sec. 945.05 would make one a gambling promoter. The Board had more than the 1972 conviction on which to base its conclusion. A party who sells and rents illegal gambling equipment and supplies to others clearly is engaged in the promotion of gambling and falls within that class of persons the legislature intended to exclude from participation in legalized bingo. The Board's application of sec. 163.27(2) and (4), to appellant was correct and the judgment is affirmed.

*By the Court.*—Judgment affirmed.