IN the INTEREST OF AMANDA, A Child Under the Age of 18:

WINNEBAGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent,

Grant P. THOMAS, Guardian ad Litem, Petitioner-(in T. Ct.),

v.

DARRELL A., Respondent-Appellant.†
[Case No. 94–3384.]

IN the INTEREST OF JEREMIAH A., A Child Under the Age of 18:

WINNEBAGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent,

†Petition to review denied.

■■■■■■■■■■■■■■■■

Grant P. THOMAS, Guardian ad Litem, Petitioner-(in T. Ct.),

v.

DARRELL A., Respondent-Appellant. [Case No. 94–3385.]

Court of Appeals

*Nos. 94–3384, 94–3385. Submitted on briefs March 30, 1995.—Decided May 10, 1995.*

(Also reported in 534 N.W.2d 907.)

630

631

632

On behalf of the respondent-appellant, the cause was submitted on the briefs of *R. Scott Miller, Jr.*, attorney at law, Oshkosh.

On behalf of the respondent and petitioner-(in T.Ct.), the cause was submitted on the briefs of *Leonard D. Kachinsky*, guardian ad litem, and *Grant P. Thomas*, assistant corporation council.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. Darrell A. appeals from the order terminating his parental rights to Amanda A. and Jeremiah A.[1] We conclude that § 48.415(8), STATS.,

---

[1] SECTION 809.107(6), STATS., shortens various time periods for appeals relating to termination of parental rights. The parties in the present case have stipulated to a waiver of the time limits. The statute provides:

> SUBSEQUENT PROCEEDINGS IN COURT OF APPEALS; PETITION FOR REVIEW IN SUPREME COURT. Subsequent proceedings in the appeal are governed by the procedures for civil appeals and the procedures under subch. VI, except as follows:
>
> (a) The appellant shall file a brief within 15 days after the filing of the record on appeal.
>
> (b) The respondent shall file a brief within 10 days after the service of the appellant's brief.

does not constitute an *ex post facto* law, does not violate Darrell's constitutional rights to due process or to equal protection and does not constitute double jeopardy. We further conclude that Darrell did not require a warning pursuant to § 48.356, STATS., and that the trial court did not err when it found Darrell to be an unfit parent after a psychologist failed to conduct a court-ordered examination. We therefore affirm.

Petitions for involuntary termination of parental rights (TPR) were filed against Darrell on November 25, 1992. The petitions alleged that Darrell had abandoned Amanda and Jeremiah, that the children were in need of continuing protection and services, that there had been a continuing denial of visitation rights and that the termination of Darrell's parental rights would be in the best interests of the children.[2]

(c) The appellant shall file within 10 days after the service of the respondent's brief a reply brief or statement that a reply brief will not be filed.

(d) If the guardian ad litem appointed under s. 48.235(1)(c) for the child who is the subject of the proceeding takes the position of the appellant, the guardian ad litem's brief shall be filed within 15 days after the filing of the record on appeal with the court of appeals. If the guardian ad litem takes the position of a respondent, the guardian ad litem's brief shall be filed within 10 days after service of the appellant's brief.

(e) Cases appealed under this section shall be given preference and shall be taken in an order that ensures that a decision is issued within 45 days after the filing of the record on appeal with the court of appeals.

(f) A petition for review of an appeal in the supreme court, if any, shall be filed within 15 days after the date of the decision of the court of appeals. The supreme court shall give preference to a petition for review of an appeal filed under this paragraph.

[2] The original petitions for termination of parental rights based termination on the grounds of (1) abandonment, § 48.415 (1), STATS.; (2) the continuing need of the children for protection

634

In 1989, Darrell was convicted of murdering Deborah B., the children's mother. He was sentenced to life imprisonment and was an inmate at Waupun Correctional Institution at the time the TPR petitions were filed.

In a memorandum to the trial court filed on March 31, 1993, Grant Thomas, the children's guardian ad litem, at that time, stated that Darrell's "intentional criminal conduct, incarceration, and consequential inability to care for his minor children" are factors which should be considered in determining whether to terminate Darrell's parental rights. In May 1994, Thomas filed a motion to amend the petitions for involuntary termination of parental rights to include the recently enacted statutory provision, § 48.415(8), STATS., making the intentional homicide of a parent grounds for termination of parental rights. The trial court subsequently ordered that the petitions be amended to include the provision of § 48.415(8) as grounds for termination.

Thomas filed a motion for summary judgment on the grounds that Darrell was convicted of first-degree intentional homicide of Deborah, and that § 48.415(8), STATS., permits the involuntary termination of parental rights under these circumstances. The trial court granted Thomas's motion for summary judgment.[3] The

and services, § 48.415(2); and (3) the continuing denial of periods of physical placement, § 48.415(4). The trial court dismissed the first and third grounds and proceeded only on the ground of the children's continuing need of protection and services.

[3] Because proceedings in the present case were conducted prior to the release of *Walworth County Dep't of Human Servs. v. Elizabeth W.*, 189 Wis. 2d 432, 525 N.W.2d 384 (Ct. App. 1994), summary judgment was not inappropriate.

court then ordered Darrell's parental rights to Amanda and Jeremiah be terminated. Darrell appeals.

Whether § 48.415(8), STATS., as applied to Darrell, constitutes an *ex post facto* law or multiple punishment for the same crime are questions which require the application of constitutional principles to the facts. This same standard is also applied to the issues of whether the statute violates Darrell's rights to due process and equal protection. We independently determine "from the facts as found by the trial court whether any time-honored constitutional principles were offended" in the present case. *See State v. Pheil*, 152 Wis. 2d 523, 529, 449 N.W.2d 858, 861 (Ct. App. 1989) (quoted source omitted).

### *Ex Post Facto Analysis*

Darrell argues that the termination of his parental rights pursuant to § 48.415(8), STATS., a statute enacted several years after commission of the offense which formed the basis for the termination of his parental rights, constitutes an *ex post facto* law in violation of Article I, Section 10 of the United States Constitution and Article I, Section 12 of the Wisconsin Constitution. Section § 48.415(8), created by 1993 Wis. Act 235, 1, provides:

> INTENTIONAL HOMICIDE OF PARENT. Intentional homicide of a parent may be established by a showing that a parent of the child has been a victim of first-degree intentional homicide in violation of s. 940.01 or of 2nd-degree intentional homicide in violation of s. 940.05 and that the person whose parental rights are sought to be terminated has been convicted of that intentional homicide.

1993 Wis. Act 235, 2, provides:

636

> **Initial applicability.** This act first applies to petitions for termination of parental rights under section 48.42(1) of the statutes filed on the effective date [April 23, 1994] of this SECTION, but does not preclude consideration of a conviction under section 940.01 or 940.05 of the statutes obtained before the effective date of this SECTION in determining whether to terminate, or to find grounds to terminate, the parental rights of a person under section 48.415(8) of the statutes, as created by this act.

Darrell contends that subsec. (8) changes and inflicts a greater punishment for the intentional homicide of a spouse by adding an additional penalty—the termination of the surviving parent's parental rights.

Initially, we note that "constitutional challenges to a statute must overcome a strong presumption of constitutionality." *State v. Thiel*, 188 Wis. 2d 695, 706, 524 N.W.2d 641, 645 (1994). One attacking a statute on constitutional grounds has the burden of proving that it is unconstitutional beyond a reasonable doubt. *Wisconsin Bingo Sup. & Equip. Co. v. Wisconsin Bingo Control Bd.*, 88 Wis. 2d 293, 301, 276 N.W.2d 716, 719 (1979).

In a recent Wisconsin Supreme Court decision, the court held that an *ex post facto* law is any law "which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with [a] crime of any defense available according to law at the time when the act was committed." *Thiel*, 188 Wis. 2d at 703, 524 N.W.2d at 644 (quoted source omitted). Keeping this definition in mind, we turn to the language in

*Wisconsin Bingo,* 88 Wis. 2d at 305, 276 N.W.2d at 721, which provides:

> The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation . . .. [Quoted source omitted.]

We must determine, therefore, whether § 48.415(8), STATS., was enacted with the intent of punishing Darrell for murdering Deborah or whether the termination of his parental rights has come about as a relevant incident to a regulation of a present situation.

We conclude that the legislature did not have a punitive intent when it enacted § 48.415(8), STATS.; therefore, the statute does not violate the *ex post facto* clause of either the Wisconsin or the United States Constitution. After reviewing the legislative history of the provision, there is no evidence that the purpose of § 48.415(8) is to punish. Reading the provision in light of the purpose of the entire chapter, the intent of subsec. (8) is to provide a child whose parent has been convicted of murdering the other parent with permanent and stable family relationships. *See* § 48.01(1)(g), STATS. While Darrell must indeed face the unpleasant consequences of the termination of his parental rights as a result of his crime, the intent of the provision is to aid children rather than to further punish convicted murderers.

### Due Process Analysis

Next, Darrell argues that the termination of his parental rights pursuant to § 48.415(8), STATS., violates his due process rights. He asserts that the state does not have a compelling interest in applying this statute to him and that it is not narrowly tailored to serve the government's interest.

Strict judicial scrutiny is required when certain fundamental rights are affected by governmental action. *K.N.K. v. Buhler*, 139 Wis. 2d 190, 211, 407 N.W.2d 281, 291 (Ct. App. 1987). Darrell correctly states that "a parental rights termination proceeding interferes with a fundamental right." *See Santosky v. Kramer*, 455 U.S. 745, 754 n.7 (1982). The state's ability to deprive a person of the fundamental liberty to one's children must rest on a consideration that society has a compelling interest in such deprivation. *See K.N.K.*, 139 Wis. 2d at 211, 407 N.W.2d at 291. Additionally, the infringement on such a liberty must be narrowly tailored to serve the compelling state interest. *See Reno v. Flores*, 507 U.S. —, 113 S. Ct. 1439, 1447 (1993).

We conclude that the termination of Darrell's parental rights pursuant to § 48.415(8), STATS., did not violate his due process rights. The state has a compelling interest in the continuing welfare of its children. *See R.D.K. v. Sheboygan County Social Servs. Dep't*, 105 Wis. 2d 91, 110, 312 N.W.2d 840, 850 (Ct. App. 1981). Section 48.415(8) directly furthers this goal. We further conclude that subsec. (8) is narrowly tailored to achieve the desired goal. Subsection (8) requires that a parent be a victim of first-degree intentional homicide or of second-degree intentional homicide and that the

person whose parental rights are sought to be terminated has been convicted of that intentional homicide.

### Equal Protection Analysis

Darrell also argues that termination of his parental rights pursuant to § 48.415(8), STATS., violates his right to equal protection. He states that "while there is an interest in preserving and promoting the welfare of children, the classification is both overinclusive and underinclusive in achieving that goal, and is therefore not closely tailored to effectuate that interest."

As we stated previously, when a fundamental interest is involved, we must apply a strict scrutiny test and the state must show a compelling state interest to justify the classification affecting the interest. *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 506-07, 261 N.W.2d 434, 441 (1978). Darrell cites *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978), for the following proposition:

> When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.

We conclude that the termination of Darrell's parental rights pursuant to § 48.415(8), STATS., did not violate his right to equal protection. Darrell states that the statutory classification is the retroactive application of § 48.415(8) to Darrell and others similarly situated. While this statutory classification may interfere with the exercise of Darrell's parental rights, it is supported by the compelling state interest of child wel-

fare in Wisconsin. *See R.D.K.*, 105 Wis. 2d at 110, 312 N.W.2d at 850. Furthermore, § 48.415(8) is closely tailored in its wording to effectuate only that interest.

## Double Jeopardy Analysis

Next, Darrell asserts that the termination of his parental rights pursuant to § 48.415(8), STATS., constitutes double jeopardy. He states that terminating his parental rights on the basis of his homicide conviction constitutes multiple punishments for the same offense.

The Double Jeopardy Clause of the Fifth Amendment has been interpreted to include three separate constitutional protections: (1) protection against a second prosecution for the same offense after an acquittal, (2) protection against a second prosecution for the same offense after conviction and (3) protection against multiple punishment for the same offense. *State v. Kurzawa*, 180 Wis. 2d 502, 515, 509 N.W.2d 712, 717, *cert. denied*, 114 S. Ct. 2712 (1994). Darrell cites *United States v. Halper*, 490 U.S. 435 (1989), for the proposition that "civil sanctions following a criminal conviction constitute a second punishment for purposes of the prohibition against double jeopardy." The issue pertaining to the present situation can be framed in the same manner as in *Halper*: Whether the statutory ground authorized by subsec. (8) for the termination of parental rights constitutes a second "punishment" for the purpose of double jeopardy analysis. *See id.* at 441.

The Court in *Halper* stated that a violation of the double jeopardy clause's proscription of multiple punishments can only be identified by assessing the character of the actual sanctions imposed on the individual. *Id.* at 447-48. The Court held that civil

641

proceedings, as well as criminal proceedings, may advance both punitive and remedial goals. *Id.* at 447. "[A] civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment."[4] *Id.* at 448.

In the present case, we conclude that § 48.415(8), STATS., does not serve the goals of punishment and, therefore, the use of subsec. (8) as one of the grounds for terminating Darrell's parental rights does not constitute double jeopardy.[5] As we stated previously in the *ex post facto* portion of our discussion, there is no evidence that subsec. (8) of the statute was enacted to punish the convicted murderer. On the contrary, the purpose of subsec. (8), as evidenced by the express legislative purpose of ch. 48, STATS., is to provide children with permanent and stable family relationships. *See* § 48.01(1)(g), STATS.

---

[4] "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *United States v. Halper*, 490 U.S. 435, 448 (1989).

[5] The discussion in *Halper* departs from the issue of this appeal when it goes on to state that "it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment." *Id.* at 449. While this portion of the Supreme Court's analysis is not applicable to the situation before us, the Court's double jeopardy analysis is analogous to this issue.

*Applicability of § 48.356,* STATS.

Next, Darrell argues that the termination of his parental rights pursuant to § 48.415(8), STATS., fails to comply with § 48.356, STATS., "which requires the trial court to inform the parent of any ground for termination under 48.415 which may be applicable." Section 48.356 provides:

> (1) Whenever the court orders a child to be placed outside his or her home because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the court shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child to be returned to the home.
>
> (2) In addition to the notice required under sub. (1), any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the information specified under sub. (1).

The County agrees that there is a conflict between the subsections, but argues that Darrell was given warning of any grounds for the termination of his parental rights because at the time the warning was given, subsec. (8) did not exist.

■■■

When confronted with an apparent conflict between statutes, we will construe sections on the same subject matter to harmonize the provisions and to give each full force and effect. *See Bingenheimer v. DHSS*, 129 Wis. 2d 100, 107, 383 N.W.2d 898, 901 (1986).

We begin our discussion by noting that "the power of the state to terminate the parental relationship is an awesome one, which can only be exercised under proved facts and procedures which assure that the power is justly exercised." *M.W. v. Monroe County Dep't of Human Servs.*, 116 Wis. 2d 432, 436, 342 N.W.2d 410, 412 (1984). The underlying purpose of the court's duty to warn a parent of "any grounds for termination of parental rights under s. 48.415 which may be applicable" is to give a parent every possible opportunity to remedy the situation. This is illustrated in the warning given to parents which outlines the conditions necessary for the return of the child, and in the language of § 48.356, STATS., itself, which states that at the time that the parents are informed of the grounds for TPR, the court must also inform them of the conditions necessary for the child to be returned to the home.[6] Section 48.356(1).

Under subsecs. (1) through (6) of § 48.415, STATS.,[7] a parent has the ability to remedy the situation. Therefore, the court must inform the parent of the possible grounds and then give him or her guidance on how the

---

[6] The necessity of giving a parent every opportunity to remedy the situation is supported by the chapter's express legislative purpose:

> The courts and agencies responsible for child welfare should assist parents in changing any circumstances in the home which might harm the child or which may require the child to be placed outside the home.

Section 48.01(1)(g), STATS.

[7] The applicability of § 48.356, STATS., to subsec. (7) of 48.415, STATS., is not before us on appeal and therefore we do not address it.

children may be returned to the home. Subsection (8) differs from these other grounds in that a homicide cannot be remedied. There is no way for the surviving parent to rehabilitate himself or herself. In such a case, where rehabilitation of the family unit is impossible, we conclude as a matter of law that there is no need for notice under § 48.356, STATS. Notice in this situation would be superfluous. *See Village of Menomonee Falls v. Michelson*, 104 Wis. 2d 137, 151, 311 N.W.2d 658, 665 (Ct. App. 1981) ("[A] basic rule of statutory construction is to avoid such a construction as would result in any portion of the statute being superfluous."). The harmonizing of the statutes in this manner gives full force and effect to both provisions.

### *Discretionary Decision*

Next, Darrell argues that the trial court erred when it found him to be an unfit parent after it failed to abide by its own order requiring Dr. Allen Hauer "to conduct an examination of [Darrell] in accordance with a stipulation of the parties to determine said examination." Darrell further notes that he was not able to present any evidence with respect to his parenting abilities as a result of the doctor's failure to examine him.

■■■■■■

The court's decision not to require an examination of Darrell after Hauer had failed to do so pursuant to court order was within its discretion. We will not reverse such a decision if the trial court did not erroneously exercise its discretion. *See Schultz v. Darlington Mut. Ins. Co.*, 181 Wis. 2d 646, 656, 511 N.W.2d 879, 883 (1994). We agree with the County and conclude that Darrell has provided no authority, and we can find none, which would require Hauer to evaluate Darrell.

Hauer examined the children on two separate occasions. Hauer was questioned as follows:

Q: In terms of the Order, it indicates that you were to conduct a psychological examination of [Darrell] to determine whether he has the ability to adequately parent his children. Can you make— Is it true you cannot make that determination because you did not examine [Darrell]?

A: I could not make that determination based upon an examination. I believe I can make an opinion on that based upon my knowledge of the case retrieved from other sources other than direct examination.

Hauer stated that he based his opinion upon his understanding of the history of the case, Darrell's conviction for the murder of the children's mother which occurred in the children's presence and his knowledge of the children's feelings toward Darrell. We conclude that the trial court did not err in finding Darrell to be an unfit parent despite the fact that Hauer did not examine Darrell. We further conclude that Darrell was not prejudiced by Hauer's failure to examine him.

*By the Court.*—Order affirmed.

NETTESHEIM, J. (*concurring*). I agree with the majority that the juvenile court orders in this case should be affirmed. However, I reach that conclusion on a different basis. I contend that we must unfortunately, but necessarily, affirm the orders because we have lost our competency to proceed in this appeal since our decision is issued beyond the statutory deadline set out in § 809.107, STATS.

Section 809.107, STATS., provides, in relevant part, at subsec. (6):

> (a) The appellant shall file a brief within 15 days after the filing of the record on appeal.
> (b) The respondent shall file a brief within 10 days after the service of the appellant's brief.
> (c) The appellant shall file within 10 days after the service of the respondent's brief a reply brief or statement that a reply brief will not be filed.
> . . ..
> *(e) Cases appealed under this section shall be given preference and shall be taken in an order that ensures that a decision is issued within 45 days after the filing of the record on appeal with the court of appeals.* [Emphasis added.]

The parties to this appeal have previously stipulated to waive the statutory deadline within which this court must issue its decision pursuant to this statute. However, since the statutory deadline travels to this court's subject matter jurisdiction and occasions the loss of our competency to proceed, the parties' stipulation is of no consequence. *See Green County Dep't of Human Servs. v. H.N.*, 162 Wis. 2d 635, 657, 469 N.W.2d 845, 853-54 (1991). "[W]e have consistently ruled that a court's loss of power due to the failure to act within statutory time periods cannot be stipulated to nor waived." *Id.* In addition, we must inquire as to our subject matter jurisdiction even if the parties do not raise the question. *State ex rel. Teaching Assistants Ass'n v. University of Wis.—Madison*, 96 Wis. 2d 492, 495, 292 N.W.2d 657, 659 (Ct. App. 1980).

If it were not for the supreme court's decision in *Green County*, I would treat the statutory deadline set out in § 809.107, STATS., as a mere administrative directive by the legislature, akin to our holding in *Vil-*

*lage of Elkhart Lake v. Borzyskowski*, 123 Wis. 2d 185, 194, 366 N.W.2d 506, 510 (Ct. App. 1985). There, we held that the circuit court did not lose jurisdiction to adjudicate an implied consent proceeding despite the court's failure to decide the case within the five-day requirement set out in § 345.305(8)(b), STATS., 1983-84.[1] *Borzyskowski*, 123 Wis. 2d at 193-94, 366 N.W.2d at 510. We said:

> Once jurisdiction has attached it continues until final disposition. The normal construction of jurisdictional rules includes a presumption that once jurisdiction attaches, it cannot be ousted or lost absent a clear indication of such a purpose. Any doubt is resolved in favor of retention of jurisdiction. The divestiture of jurisdiction is a serious matter, and therefore, before a party can claim that a statute has the effect of divesting jurisdiction which has regularly and fully vested, the law in favor of such divestment must be clear and unambiguous.

*Id.* at 193, 366 N.W.2d at 510 (citations omitted).

Because the statute did not indicate that the trial court lost jurisdiction, we adhered to the presumption that jurisdiction still prevailed. *Id.* at 194, 366 N.W.2d at 510. Instead, we construed the statutory deadline as "an administrative directive by the legislature" signaling its "desire for promptness in issuing decisions related to refusal hearings." *Id.*

However, the supreme court's decision in the later *Green County* case presents serious obstacles to an application of the *Borzyskowski* rationale to this case.

---

[1] In *Village of Elkhart Lake v. Borzyskowski*, 123 Wis. 2d 185, 192 n.3, 366 N.W.2d 506, 510 (Ct. App. 1985), the appellant did not specify whether he was challenging subject matter jurisdiction, personal jurisdiction, or both.

In *Green County*, the juvenile court had scheduled a hearing for the extension of a CHIPS order within the thirty-day time limit following the expiration of the prior order pursuant to § 48.365(6), STATS. However, the hearing was adjourned to a date outside the statutory limit at the request of the parent and without objection from the other interested parties. *Green County*, 162 Wis. 2d at 642-43, 469 N.W.2d at 847. When the hearing was finally commenced, the parent who had obtained the adjournment contended that the juvenile court had lost jurisdiction because the statutory deadline had passed. *Id.* at 643, 469 N.W.2d at 847-48.

The supreme court ruled that the failure to hold the hearing within the prescribed statutory time limit caused the juvenile court to lose its competency. *Id.* at 654, 469 N.W.2d at 852. The court stated that "the child clearly has a due process right to have his or her 'best interests' redetermined by a fixed date." *Id.* at 649, 469 N.W.2d at 850. The court held that this was so even if the expiration of the CHIPS order put the child's best interests at risk. *See id.*

In so holding, the supreme court rejected the appellant's argument that § 48.315, STATS., the general statute governing continuances in ch. 48, STATS., proceedings, authorized the juvenile court to hold the extension hearing beyond the thirty-day time limit specifically recited in § 48.365(6), STATS. *Green County*, 162 Wis. 2d at 653-54, 469 N.W.2d at 852. The court stated, "Chapter 48 is considered a carefully drawn legislative enactment which circumscribes judicial and administrative action in juvenile matters." *Green County*, 162 Wis. 2d at 645-46, 469 N.W.2d at 849.

In making its ruling, the supreme court did not specifically address the presumption in favor of the

649

retention of jurisdiction upon which we relied in *Borzyskowski*.

I conclude that *Green County* governs this case. As the supreme court cautioned, ch. 48, STATS., represents a carefully drawn legislative circumscription of judicial and administrative actions in juvenile matters. *Green County*, 162 Wis. 2d at 645-46, 469 N.W.2d at 849. I recognize that § 809.107, STATS., is obviously not embodied in ch. 48. However, the statute expressly addresses, and is limited to, appeals in ch. 48 termination of parental rights cases. The question of the statute's effect on our competency to proceed should not be governed by the accident of where it is located in the statutes. Rather, the question should be governed by the statute's language, focus and effect. Section 809.107 is aimed squarely at appeals in ch. 48 termination of parental rights cases. Just as § 48.365(6), STATS., carefully circumscribes the juvenile court's competency to proceed in termination cases, so also does § 809.107 carefully circumscribe our appellate competency to proceed in such cases.

That *Green County* was a CHIPS case, whereas this is a termination case, does not change the effect of the supreme court's language. The overriding concern in all ch. 48, STATS., proceedings is the best interests of the child. *See* § 48.01(2), STATS. If a child's due process right to certainty regarding his or her status under a proposed CHIPS extension order requires determination by a fixed date, *see Green County*, 162 Wis. 2d at 649, 469 N.W.2d at 850, then the child must certainly have an equivalent right in a termination of parental rights proceeding. The same would hold true for parents in such a proceeding.

Thus, I see us as bound by the supreme court's logic and analysis in *Green County*, despite the differ-

ent nature of this proceeding and the different judicial level at which it is considered. On this basis, I conclude that we have lost our competency to proceed, and we must affirm the juvenile court's orders as a result.

Having said all of the above, I nonetheless address the folly and illogic of § 809.107, STATS. As noted, the statute requires that this court issue its decision within forty-five days after the filing of the record on appeal with the court of appeals. *See* § 809.107(6)(e). The appellate record in this case was filed on January 20, 1995. Thus, our decision was due on March 6, 1995. As the accompanying footnote explains, the workings of § 809.107 required our decision in this case to be issued on the very day the appellant's reply brief was due.[2] Recently, this court encountered a case where the statute required our decision to be issued *before the*

---

[2] In making this computation, we look to the following statutes: (1) § 809.107(6)(e), STATS., which requires that the court of appeals decision be issued within forty-five days after the filing of the record on appeal; (2) RULE 809.82, STATS., which provides that in computing the time limits under the Rules of Appellate Procedure, § 801.15(1), STATS., applies; and (3) § 801.15(1), STATS., which excludes from the computation the day of the act from which the designated period of time runs, the last day of the period if it falls on a nonworking day, and weekends and holidays when the prescribed period of time is less than eleven days.

The appellate record in this case was filed on January 20, 1995. The appellant's brief was due fifteen days later. Since that deadline fell on a Saturday, the appellant's brief was due the following Monday, February 6.

The respondent's brief was due ten days later. Since that deadline was less than eleven days, the ensuing weekend days are not included in the computation. Thus, the respondent's brief was due on February 20. The appellant's reply brief was due ten days later. Again, the ensuing weekend is excluded from

651

*appellant's reply brief was due.*[3]*See Fond du Lac County Dep't of Social Services v. Shairi A.K.*, No. 94-2956, unpublished slip op. at 3 (Wis. Ct. App. Dec. 28, 1994).

It is obvious that this statute is unworkable. At the risk of oversimplification, the appellate process requires the following: (1) reading the briefs; (2) examining the trial court record; (3) legal research; (4) the decision-making process by the assigned single judge or a decision conference by a three-judge panel if the case is converted to a three-judge appeal; (5) writing the opinion by the author; (6) reviewing of the opinion by the other members of the panel; and (7) editing, cite-checking and proofreading the opinion before release.

The legislative requirement set out in § 809.107(6), STATS., offers minimal opportunity in all cases, and no opportunity in others, for the orderly progression of this process, nor for the reflection, study and consideration which the appellate process requires.

I appreciate that the legislature's enactment of § 809.107, STATS., was intended to speed up the appellate process in termination of parental rights cases. While the legislature undoubtedly thought that such was in the best interests of children (and perhaps parents), I seriously question whether this statute serves that goal. While every court has an obligation to conduct its business with efficiency and appropriate speed, it also has an obligation to give every case the consideration it deserves. This statute imposes artificial haste

---

the computation. Thus, the appellant's reply brief was due on March 6, the very day our decision was required to be issued.

[3] Fortunately, the appellant chose not to file a reply brief and so advised us in sufficient advance time such that we could comply with the time limit.

on the appellate process. A hasty decision runs a greater risk of being a wrong decision.

Moreover, it appears that the only judicial entity governed by a decisional deadline in termination of parental rights cases is the court of appeals. The statute does not impose any similar deadline on the supreme court.[4] And, while the juvenile code imposes many procedural time limits on the juvenile court as to *when* it must conduct proceedings, it does not impose any time deadline within which the juvenile court must *decide* an ultimate issue. This uneven treatment between the juvenile court and the supreme court on the one hand and the court of appeals on the other makes no sense.

Finally, a statute which imposes decisional deadlines on the judicial branch of government where there are no forces of nature, biology or law which otherwise compel such haste may raise serious constitutional questions regarding separation of powers.

Section 809.107, STATS., although well intended, is unwise, unworkable and perhaps unconstitutional. It should be repealed.

---

[4] An earlier proposed version of the statute required the supreme court to issue its decision within forty-five days after granting a petition for review. This provision was later removed. The statute as enacted merely requires the supreme court to give "preference" to a petition for review. Section 809.107(6)(f), STATS. It imposes no deadline for issuance of a supreme court decision if a petition for review is granted.