BENEFIT TRUST LIFE INSURANCE COMPANY, an Illinois mutual insurance corporation, Petitioner-Appellant,

v.

OFFICE OF the COMMISSIONER OF INSURANCE, Timothy J. Young, Trustee of the Bankrupt Estate of Universal Foundry Company, Respondents.†

Court of Appeals

*No. 86–0323. Argued June 3, 1987.—Decided December 10, 1987.*

(Also reported in 419 N.W.2d 265.)

† Petition to review denied.

For the petitioner-appellant there were briefs by *Jon P. Axelrod* and *DeWitt, Sundby, Huggett, Schumacher & Morgan, S.C.,* of Madison, and oral argument by *Jon P. Axelrod.*

For the respondent Office of the Commissioner of Insurance there was a brief by *Bronson C. La Follette,* attorney general, and *Edward S. Marion,* assistant attorney general, and oral argument by *Daniel D. Stier,* assistant attorney general.

For the respondent Trustee there was a brief by *Gilbert W. Church* and *Foley & Lardner,* of Milwaukee, and oral argument by *Gilbert W. Church.*

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Benefit Trust Life Insurance Company appeals from an order affirming a decision of the Wisconsin Commissioner of Insurance. The commissioner ordered Benefit Trust to reinstate a "stop-loss" or "excess risk" policy issued to the Universal Foundry Company which Benefit Trust had sought to terminate. The issues are: (1) whether Benefit Trust's policy is a group policy within the meaning of sec. 632.79(2)(a), Stats., which requires an insurer to provide notices to the policyholder's employees informing them of the date on which group benefits will be canceled; (2) whether Benefit Trust's attempt to terminate the policy failed because of noncompliance with the ten-day precancellation notice requirements of sec. 631.36(2)(b), Stats; and (3) whether the hearing examiner's alleged conflict of interest resulted in a denial of due process. We conclude that Benefit Trust is not subject to sec. 632.79(2)(a), and that its October 21, 1982, letter to Universal was effective to terminate the policy ten days thereafter. We do not reach the third issue, as the first two are dispositive. We therefore reverse.

Universal provided health coverage to its employees through a self-insurance plan, paying the benefits out of its own funds. To protect against extraordinary losses, it purchased excess risk coverage from Benefit Trust under a policy providing that Benefit Trust would reimburse Universal for benefits paid to its employees over and above an agreed-upon threshold amount. The policy contains none of the provisions

commonly found in employee group medical plans. It lists Universal as the policyholder and provides for payment of "excess risk benefits" solely to Universal.

In 1982, Benefit Trust attempted to cancel the policy after Universal failed to pay an overdue premium. Universal complained to the commissioner of insurance, claiming that it had not received proper notice of the purported cancellation. The commissioner eventually ruled that Benefit Trust had not complied with the statutory notice provisions for cancellation of group insurance plans and ordered compliance with those provisions. On review, the circuit court affirmed the commissioner's order and Benefit Trust appealed.

The issues involve statutory construction and thus raise only questions of law.[1] *Guertin v. Harbour Assur. Co.,* 135 Wis. 2d 334, 338, 400 N.W.2d 56, 58 (Ct. App. 1986). While we generally review questions of law *de novo,* when the legislature has charged an administrative agency with enforcement of a particular statute, we will accord the agency's interpretation of that statute "great weight" and will sustain it if it has a rational basis. *School Dist. of Drummond v. WERC,* 121 Wis. 2d 126, 132–33, 358 N.W.2d 285, 288 (1984). Where, however, the question is one of first

---

[1]The commissioner states the scope of review as whether its decision is supported by substantial evidence in the record. That is the appropriate test for findings of fact, but whether a particular set of facts meets a legal standard—whether Benefit Trust's policy is a group policy within the meaning of sec. 632.79(2)(a), Stats., or whether its letters to Universal constituted notice under the statute—are questions of law which, with the exceptions indicated in the body of the opinion, we review *de novo. State v. Hagaman,* 133 Wis. 2d 381, 384–85, 395 N.W.2d 617, 618 (Ct. App. 1986).

impression, we will give the agency's interpretation only due weight in determining the appropriate construction of the statute, rather than apply the "great weight/rational basis" standard. *Id.* at 133, 358 N.W.2d at 289. The latter standard is applicable only in situations where the agency's "interpretation reflects a practice or position 'long continued, substantially uniform and without challenge by governmental authorities and courts.'" *Berns v. Wis. Employment Relations Comm.,* 99 Wis. 2d 252, 261, 299 N.W.2d 248, 253 (1980), quoting *Wood County v. Bd. of Vocational, T. & A. Ed.,* 60 Wis. 2d 606, 618, 211 N.W.2d 617, 623 (1973).

The commissioner does not argue that his interpretation of the statutes involved in this case is uniform and longstanding. In his findings of fact, however, he refers to a letter to an insurer and the minutes of an intraoffice committee between November, 1982, and March, 1983, indicating his department's belief that the termination and conversion notice provisions applicable to group policies also apply to stop-loss policies.[2] We do not consider these examples to constitute adequate evidence of a longstanding construction of secs. 632.79 and 631.36, Stats., which would warrant according greater than due weight to the agency's interpretation of those statutes in this case.

---

[2]The commissioner's findings also refer to other internal office memoranda and letters to insurers between February, 1982, and June, 1983, but these documents do not appear to refer to termination of stop-loss or excess risk policies.

## *Is the Policy a Group Policy Within the Meaning of Sec. 632.79, Stats?*

The commissioner concluded that Benefit Trust's policy was a group policy subject to the requirements of sec. 632.79(2)(a), Stats., which provides in part as follows:

> Prior to termination of any group policy, plan or coverage subject to this section due to a ... default in payment of premiums by the policyholder, ... the insurer ... shall notify [the policyholder] in writing ... of the date as of which the policy or plan will be terminated or discontinued. At such time, the insurer ... shall additionally furnish to the policyholder ... a notice form in sufficient number to be distributed to covered employees or members indicating what rights, if any, are available to them upon termination.

Benefit Trust concedes that it did not furnish the employee notice forms to Universal. It asserts, however, that it was not required to do so because the policy was not a group policy. We agree.

The notice provisions of sec. 632.79(2)(a), Stats., apply to "every group hospital ... or medical expense ... plan purchased by or on behalf of an employer to provide coverage for employees ...." Sec. 632.79(1). Section 600.03(23), Stats., defines "group insurance policy" as "a policy covering a group of persons, and issued to a policyholder in behalf of the group for the benefit of group members who are selected under procedures defined in the policy or agreements collateral thereto ...."

The Benefit Trust policy is not such a plan or policy. It expressly states that it "provides no coverage

588

to any individual covered under the [Universal Foundry] Plan," and that Benefit Trust "assumes no liability under the Plan except as provided in this Policy." Universal purchased the policy on its own behalf to provide coverage for its own "losses"—any sums over and above a certain amount paid to its employees under its own self-insurance plan. Though the commissioner did not discuss the specifics of the plan, it is documented in the record, and we see nothing in its provisions to suggest that the employees, in the case of nonpayment by Universal, had any recourse against Benefit Trust. Universal simply sought to protect itself by purchasing an excess risk policy to cover its losses once the threshold amount had been paid out. The Benefit Trust policy protects Universal's assets, not its employees. It is not a group policy within the meaning of sec. 632.79, Stats.[3]

---

[3]The commissioner argues that Benefit Trust admitted that its stop-loss policy was a type of group insurance. The argument is based on a policy amendment and related correspondence referring to the policy as a "group policy" and mentioning "the members of [Universal's] group." However, for the purposes of sec. 632.79(2)(a), Stats., we refer to the statutory definition of "group," not to the terms Benefit Trust has chosen to use in those two documents.

The references to the policy as a group policy in the introductory sentence to the amendment is not controlling. First, there is nothing in the body of the amendment—which merely revises the premiums—indicating any intention to change the policy from an employee excess risk policy to an employee group plan. Indeed, the text of the amendment refers to the premiums as "excess risk premium[s]." Second, the amendment is expressly made subject to "all the terms, provisions and conditions" of the underlying policy. As we have said, that policy does not provide group (or any other) coverage to Universal's employees.

### The Ten-Day Cancellation Notice

Section 631.36(2)(b), Stats., provides that no policy of insurance may be canceled in midterm for failure to pay a premium "until at least 10 days after the ... mailing or delivery of a written notice to the policy-holder." On October 6, 1982, after Universal had failed to pay the premium due on September 1, 1982, Benefit Trust sent Universal a letter stating in part:

> The [31-day] grace provision of your contract(s) became effective at the end of the period covered by your last premium payment. If any premium is not paid within the grace period, your group contract(s) provide that coverage will terminate at the end of the grace period. *To avoid this action, please send us your remittance within ten days.* [Emphasis in original.]

When no payment was received, Benefit Trust, on October 21, 1982, sent another letter stating: "In view of the fact that written notice has been sent and the situation regarding delinquent premium and fees continues, *we have terminated the ... contracts ... effective October 1, 1982* ... in accordance with con-tract provision[s] ...." (Emphasis added.) The commis-sioner ruled that neither letter was adequate to permit cancellation of the policy. While we agree that the October 6, 1982, letter did not constitute the notice required by sec. 631.36(2)(b), Stats., we are satisfied that the October 21, 1982, letter was adequate notice, though cancellation could not become effective until ten days after the notice was mailed or delivered.

■

Benefit Trust argues first that the policy was not canceled but merely lapsed according to its terms, and thus no notice of any kind was required. Whether a

policy lapsed or was canceled is a question of law which we review independently. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 450, 360 N.W.2d 33, 39 (1985); *Guertin,* 135 Wis. 2d at 338, 400 N.W.2d at 58.

In *Peterson v. Truck Ins. Exchange,* 65 Wis. 2d 542, 223 N.W.2d 579 (1974), the policy period was one calendar month. It stated that coverage would lapse in the event the insured failed to pay the next month's premium prior to the end of the current month. The supreme court held that where a policy provides for an automatic lapse for failure to pay premiums on time, no notice under sec. 631.36(2)(b), Stats., is required. In so ruling, the court stated that "'[c]ancellation' refers to termination of a policy prior to the end of the policy period, and 'termination' refers to expiration of a policy by lapse of the policy period." *Id.* at 552–53, 223 N.W.2d at 584.

■

Here, the policy period was one year (February through January), and the premium was payable in monthly installments. While the policy states that it will "terminate" at the end of the grace period if any premium remains unpaid at that time, we do not consider this to be an "automatic lapse" provision such as that at issue in *Peterson.* The *Peterson* policy stated:

> The policy shall continue in force *for successive monthly periods,* if the premium required for each month is paid on or before the expiration date of the then current monthly period.
>
> If the premium is not paid as specified ..., the *policy shall automatically become lapsed and void* .... [Emphasis added.] *Peterson,* 65 Wis. 2d at 547 n. 3, 223 N.W.2d at 582.

Benefit Trust's "termination" provision is not analogous. The *Peterson* policy provided for a single advance payment for the one-month policy term and was subject to renewal for successive one-month terms as long as the advance premium was paid prior to the end of the month. Benefit Trust's policy, on the other hand, was for a one-year term, with premiums payable monthly. If any premium installment was missed and remained unpaid at expiration of the grace period, coverage could be terminated prior to the end of the stated policy term. Benefit Trust canceled the policy in midterm, and it could only do so by giving the statutory notice.

To be effective, a notice of cancellation must be unambiguous and unequivocal; it must do more than merely threaten to cancel. *Wisconsin Nat. Gas Co. v. Employers Mut. L. Ins. Co.*, 263 Wis. 633, 640–41, 58 N.W.2d 424, 428 (1953). Benefit Trust's October 6 letter does not unequivocally state that the policy will be canceled on a certain date; it merely threatens cancellation and invites payment within ten days. However, the October 21 letter unequivocally cancels the policy and provides a date and time at which the cancellation was to be effective. While substantively adequate, the notice is defective to the extent that it attempts to make the cancellation retroactive, rather than providing the ten-day advance notice demanded by sec. 631.36(2)(b), Stats.

In *Seeburger v. Citizens Mut. Fire Ins. Co.*, 267 Wis. 213, 219, 64 N.W.2d 879, 882 (1954), the supreme court considered an insurer's failure to comply with a similar notice requirement. There, the notice simply informed the insured (the mortgagee under a loss-payable clause) that the policy "has lapsed" for failure

to pay the annual premium. *Id.* at 217, 64 N.W.2d at 881. The policy, however, required a five-day notice of cancellation. The court, noting that the purpose of such a notice requirement is to provide the insured the opportunity to obtain other insurance, held that, while the notice, by its terms, did not comply with the five-day requirement, it nonetheless was adequate to cancel the policy five days after its receipt. *Id.* at 219–20, 64 N.W.2d at 883.

Benefit Trust's October 21 letter was similarly unequivocal. It stated: "In view of the fact that written notice has been sent and the situation regarding delinquent premium and fees continues. *we have terminated the ... contracts ...* effective October 1, 1982, at 12:01 A.M. ... in accordance with contract provision[s] ...." (Emphasis added.) The letter, like the notice in *Seeburger,* did not itself operate to terminate coverage—either on the date indicated or on the date of receipt by the insured—because of the failure to comply with the ten-day notice requirement. As in *Seeburger,* however, it was adequate notice that the policy would terminate after expiration of that period:

> The authorities generally hold that where a policy of insurance requires an advance notice of cancellation of a certain specified number of days, and the notice of cancellation given fails to comply therewith, nevertheless, the same is effective after the lapse of the full time stipulated in the policy. *Seeburger,* 267 Wis. at 219, 64 N.W.2d at 882.

We conclude, therefore, that Benefit Trust's October 21 letter was adequate to constitute notice of cancellation under sec. 631.36(2)(b), Stats. However, the policy remained in effect for ten days after the mailing or delivery of that notice to Universal.[4]

*By the Court.*—Order reversed and cause remanded with directions to enter an order reversing the March 14, 1985, decision of the commissioner of insurance.

---

[4]Universal eventually tendered the past-due premium and Benefit Trust refused to accept it. Section 631.36, Stats., does not require the insurer to accept premium payments tendered during the ten-day notice period. As *Seeburger,* 267 Wis. at 219–20, 64 N.W.2d at 883, makes clear, the purpose of the notice provision is "to afford the insured . . . a reasonable opportunity to obtain other insurance." Unless the policy terms themselves extend the right to reinstate, the insured has no such right. The statute provides none.