PRODUCTION CREDIT ASSOCIATION OF SOUTHEAST WISCONSIN, Plaintiff,

v.

GORTON FARMS, a Wisconsin general partnership of Michael Vanderleest, Tim Hauch, Thomas Hauch and John Gorton, Defendants-Third Party Plaintiffs-Respondents,†

v.

David KILPATRICK and Farm Credit Services of Southeast Wisconsin, Third Party Defendants-Appellants.

Court of Appeals

*No. 96–3100. Oral argument November 11, 1997.—Decided December 23, 1997.*

(Also reported in 573 N.W.2d 549.)

†Petition to review denied.

1

On behalf of the third party defendants-appellants, the cause was submitted on the briefs of *Thomas J. Basting, Sr.* and *Margery M. Tibbetts* of *Brennan, Steil, Basting & MacDougall, S.C.* of Janesville. There was oral argument by *Thomas J. Basting, Sr.*

On behalf of the defendants-third party plaintiffs-respondents, there were briefs and oral argument by *Timothy S. Knurr* of *Schoone, Fortune, Leuck, Kelley & Pitts, S.C.* of Racine.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J. The question, posed in the alternative, is this: When an insurance policy mandates that cancellation of a policy by the insured be given in writing and written notice of cancellation is given to an insurance broker, must the insured's written request for cancellation be unequivocal and absolute before a duty arises on the part of the insurance broker to cancel the policy? Or, if the required written request is ambiguous and follows up on an unambiguous oral request for cancellation, does a burden instead arise on the part of the insurance broker to contact the insured and clarify the ambiguity? We conclude that the requirement of unambiguous cancellation serves a societal interest in contractual certainty; it places on both parties the equal responsibility to act in a manner which will foster a "meeting of the minds" and it presumably limits the amount of litigation that can arise from misunderstandings between the insured and the broker. We therefore hold that when the insured provides written notice of cancellation to his or her insurance broker, the cancellation notice must be definite and unconditional before any duty arises on the broker's part to execute the cancellation with the insurer. We reverse the trial court's holding to the contrary.

Gorton Farms is a partnership whose business is crop farming. In 1992, Gorton Farms had a failed wheat crop and received a disaster payment from the federal government. One condition of receiving payment is that the recipient purchase multiperil crop insurance for the following year. John Gorton, a principal of the partnership, contacted David Kilpatrick, manager of insurance services for Farm Credit Services of Southeast Wisconsin, to purchase this form of crop insurance. Ultimately, Gorton Farms purchased

three types of policies issued by North Central Crop Insurance Company through Kilpatrick's agency. The three policies were for wheat, corn and hail for the 1993 crop year. This purchase was completed in April 1993.

The 1993 corn policy purchased by Gorton had an automatic renewal provision. It stated:

> This is a continuous policy and will remain in effect for each crop year following the signing of the original application or until cancelled by either you or us in accordance with the cancellation provision contained herein.

The cancellation provision provided:

> Prior to the cancellation date shown in the State Endorsement, this policy may be cancelled for any crop year by either you or us providing written notice to the other. In the absence of such written notice to cancel, the policy will remain in force for each succeeding crop year.

In the fall of 1993, Gorton received a newsletter from Farm Credit. The newsletter reminded farmers that the multiperil policy was continuous and may only be canceled in writing on or before the cancellation dates. The cancellation date for winter wheat was September 30, 1993, and for spring crops, including corn, the date was April 15, 1994. It was Gorton's understanding that he only needed insurance for the crop year following the disaster relief payment. On September 8, 1993, Gorton telephoned Kilpatrick. Gorton testified that he told Kilpatrick, "Dave, you know the reason we took it out was for the disaster, and . . . I want to make sure all insurance is stopped." Also in evidence is a notation Gorton wrote on the newsletter showing an arrow drawn between the words "Septem-

ber 30, 1993" and "Winter Wheat." He also wrote in the words "plus corn." Gorton also wrote down the toll-free number to contact him and under the number wrote "no insurance." Kilpatrick informed Gorton in the telephone conversation that Gorton had to send him written notice of intent to cancel the policies or else he would have insurance for the next year.

Gorton did not send anything to Kilpatrick in writing prior to September 30. The next communication between Gorton and Kilpatrick was a letter from Kilpatrick, dated October 13, enclosing a copy of the winter wheat insurance schedule and asking Gorton to review the information carefully to ensure its accuracy. If there was an error or questions, Gorton was requested to contact Kilpatrick. In response, Gorton wrote on the bottom of the letter:

10/14/93

Dave,

We don't want insurance on wheat for 94-

Thanks,
John

P.S. May take it out on corn.

Although late, North Central nonetheless accepted the written cancellation of the wheat crop because Gorton had telephoned Kilpatrick and orally canceled prior to September 30. Nothing, however, was done about the corn policy.

In December 1993, Gorton received a document from Farm Credit requesting yield history. This request was not honored and Gorton did not respond in any way. Prior to February 1, 1994, Gorton received a document entitled "North Central Crop Insurance I.D. Request." He filled out this form, requested informa-

5

tion and returned it to the insurance company. In the spring of 1994, Gorton received another newsletter from Farm Credit. And in May, he received a letter requesting an acreage report. Gorton called Kilpatrick, who informed him he was insured for corn. Later in May, Gorton and Kilpatrick had another telephone conversation where Gorton asked if he could cancel the corn policy but was told it was too late. After the harvest and marketing of the corn, Gorton received the bill for the insurance and paid it under protest. Gorton Farms then brought this action seeking to have the payment returned.

Following a trial to the court, the trial court ruled that the written cancellation was ambiguous, that Kilpatrick had a duty to clarify the ambiguity, that Kilpatrick was especially negligent because he had been told in a prior telephone conversation by Gorton that Gorton did not want any of the coverages renewed and that the coverages were renewed through the mistake or carelessness of the insurer and its agent. The trial court ordered that the coverage be rescinded. Kilpatrick and Farm Credit Services then filed this appeal. From here on, we will refer to Kilpatrick and Farm Credit Services as Kilpatrick and Gorton and Gorton Farms will be referred to as Gorton.

Preliminarily, we state our agreement with the trial court that the written notice of cancellation was ambiguous. On one hand, a reasonable person could read the postscript to mean that Gorton is canceling the corn as well as the wheat, but may take out corn insurance at a later time. After all, the corn would not be planted until spring and this was still October. On the other hand, a reasonable person could read the postscript to mean that Gorton is canceling the wheat and may also cancel the corn at a later time. Again, the

6

note was written in October and Gorton had until April 15 to cancel the corn policy. The note was ambiguous.

Given the ambiguity of the note, the position of both parties is very clear. The parties are arguing about duty. Kilpatrick argues that there is a duty on the part of every insured to give a clear and unambiguous written notice of cancellation. If that duty is not met, the insurance agent has no responsibility to act. Gorton agrees that, indeed, the question of duty is before us, but asserts that his only duty was the contractual duty to provide a written notice of cancellation. He did that. If Kilpatrick thought the notice was ambiguous, it became Kilpatrick's duty to clarify whether Gorton wanted to cancel.

The concept of duty has been termed "elusive" by our supreme court. *See Nelson v. Davidson*, 155 Wis. 2d 674, 679, 456 N.W.2d 343, 345 (1990). The question of duty presents an issue of law, and when a court resolves a question of duty, it is essentially making a policy determination. *See id.* This is especially the case here since there is no Wisconsin law imposing a duty upon the insured to provide a clear and unambiguous notice of cancellation. Similarly, there is no Wisconsin law requiring either an insurance agent or broker to clarify an ambiguous notice of cancellation.

So, in this case of first impression, we must be guided by the core principles our supreme court, our legislature and related authorities have employed when determining past questions of duty. We start with the knowledge that, in this state, when an *insurer* attempts to cancel or nonrenew a policy, the insured is protected by statutory notification requirements. *See generally* § 631.36, STATS.; *see also Benefit Trust Life Ins. Co. v. Office of the Comm'r of Ins.*, 142 Wis. 2d 582,

419 N.W.2d 265 (Ct. App. 1987). The statutes contained within ch. 631, STATS., were explicitly intended to protect the insured. They were a response to "increasing public concern and insurance industry concern over insurers arbitrarily cancelling existing automobile insurance policies and refusing to renew expired policies." *Terry v. Mongin Ins. Agency,* 105 Wis. 2d 575, 586, 314 N.W.2d 349, 355 (1982). In its statement supporting general application of these statutes, the Insurance Laws Revision Committee of the legislature opined that the "individual buyer lacks the economic power, bargaining position, and sophistication to deal on an equal basis with the insurer." Laws of 1969, ch. 144, § 24 (preliminary comment). In sum, the statute governing termination of coverage by insurers recognizes that consumers are relatively less powerful than insurers and deserve to feel confident in the efficacy and fairness of their coverage.

■ But we are not dealing with the specter of an *insurer* canceling a policy without sufficient notice. We are, in fact, only peripherally concerned with the insurer in this case. We are more concerned with the relationship existing between Gorton and Kilpatrick. While both parties rather loosely describe Kilpatrick as an insurance *agent*, in truth, Kilpatrick was not wearing the hat of an insurance agent—he was the insurance *broker*. An insurance broker is "one who acts as [a] middleman," generally on behalf of the insured, "whereas an 'insurance agent' is one who represents an insurer under an employment by it." LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 45:1 at 45–3–45–4 (3d ed. 1995). An insurance broker assumes the duties of an agent to its principal, the insured. *See Master Plumbers Ltd. Mut. Liab. Co. v. Cormany &*

*Bird, Inc.,* 79 Wis. 2d 308, 313, 255 N.W.2d 533, 535 (1977). Those duties include the obligation to exercise reasonable skill and diligence in the transaction of business entrusted to him or her. *See id.* Stated another way, the duty is to "exercise the skill and care which a 'reasonably prudent person engaged in the insurance business [would] use under similar circumstances,' " i.e., "to act in good faith and follow instructions." Douglas L. Hallet et al., *Liability of Insurance Agents and Brokers* 495 PLI/Lit 519, 542 (1994) (quoted source omitted).

The record shows that Kilpatrick acted as a "middleman" between Gorton and North Central. The written notice of cancellation was given by Gorton as "principal" to his broker, acting as *his* agent. An unambiguous written notice of cancellation to Kilpatrick would undoubtedly have bound the insurer, and in that sense, Kilpatrick would have been the insurer's agent. But Kilpatrick here was wearing the hat of a broker. As such, an unambiguous written notice of cancellation would also place a duty on Kilpatrick, as *Gorton's* agent, to act and see to it that the insurance was canceled. The question is what Kilpatrick's duty to act was when his principal gave an ambiguous instruction to him.

Given that this is not a dispute between an insurance company and a consumer, the concerns about economic power, lack of bargaining position and sophistication are nonexistent. The principal and his agent, Gorton and Kilpatrick, stand on equal footing regarding the facts here. The drafting of a notice by an insured that he or she does not want insurance coverage anymore does not require the insured to use any technical, legal language. All it requires is clear, written communication. Certainly, it takes no special

expertise for a reasonable person to write a clear and unambiguous instruction to his or her agent ordering that agent to cancel a policy. To excuse Gorton from giving instructions to his own agent in a clear and concise manner just because his agent happens to be his insurance broker is not tenable to us. As stated above, the broker's duty is to follow instructions. But first the broker must know what the instructions are.

Gorton insists that the peculiar facts and circumstances auger for a different result. He observes that he verbally told Kilpatrick that he wanted to cancel all the policies. When he followed up with a letter canceling the wheat and postscripting the corn, Gorton argues that any reasonable insurance broker would have connected that postscript with the telephone conversation and would have sought to clarify the instructions. Gorton contends that Kilpatrick did not act in a manner which was reasonably prudent given these facts.

Maybe a different broker in Kilpatrick's position would have called Gorton to clarify the meaning of the postscript. However, we echo what the supreme court said in *Nelson*. There, the court held that there was no duty on the part of an insurance agent to provide advice about " 'the best coverage' available" or follow up on an insured's possible changing needs on an ongoing basis. *See Nelson,* 155 Wis. 2d at 684–85, 456 N.W.2d at 347. The court commented that while it "may be good business for an insurance agent to make . . . suggestions, [about what would be the best coverage available] and perhaps inquire into financial circumstances, the failure to do so does not constitute either negligence or breach of contract . . . ." *Id.* at 680–81, 456 N.W.2d at 346. Here, while it may be good business judgment for a broker to clarify instructions with his or her princi-

pal, we are not going to say that there is a legal duty to do so. To impose a duty on someone means that a court has looked at the "hand of history, our ideas of morals and justice, the convenience of administration of the rule, *and our social ideas as to where the loss should fall.*" *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 184, 77 N.W.2d 397, 402 (1956) (emphasis added) (quoting Dean Prosser, *Palsgraf Revisited,* 52 Mich. L. Rev. 1, 14–15 (1953)). We conclude that when there is an ambiguous notice of cancellation, the loss should fall on the person who wrote the ambiguous notice.

*By the Court.*—Judgment reversed.