## BUSINESS FLYING ENTERPRISES, INC., et al., Plaintiffs–Appellants,

v.

## WENK AVIATION INSURANCE AGENCY, INC., et al., Defendants–Appellees.

No. 99–3047.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 2001.

Decided Feb. 28, 2001.

Before EASTERBROOK, EVANS, WILLIAMS, Circuit Judges.

Order

When he applied for aviation insurance in 1991, Allen Gelin specified that his plane (title to which was held by Business Flying Enterprises) would be used in the 48 contiguous United States and Canada. American Eagle Insurance Company issued a policy whose coverage corresponds to Gelin's request. The territorial-coverage clause states (emphasis in original):

> When and Where You are Covered. You are only covered for occurrences during the policy period while the aircraft or other covered property is in, or enroute between, the United States (excluding Alaska), Canada, Mexico or the Bahama Islands.

Two years later, when Gelin switched insurance agencies, he did not request a change of coverage, and Wenk Aviation Insurance Agency arranged for a renewal of the American Eagle policy. Late in 1994 American Eagle decided to update its files, and it transmitted to Gelin (through Wenk) a form that requested, among other things, information about whether the plane would be operated "outside the Continental USA" (and, if so, how often). Gelin left this space blank, and American Eagle left the territorial-coverage clause exactly as written in 1991.

Thus when Gelin's airplane crashed on its way to King Salmon, Alaska, on July 29, 1995, with Gelin at the controls, the accident (which caused Gelin's death) was uninsured. This litigation began as a declaratory judgment action by American

Eagle; Business Flying and Gelin's estate added a third-party claim blaming Wenk for the lack of coverage. American Eagle, which is in reorganization in Texas, has dropped out, leaving only the dispute between Business Flying (plus the estate, which for simplicity we group with Business Flying) and Wenk (as we call that firm and related entities). The district court granted summary judgment in Wenk's favor, ruling that it had obtained the policy Gelin wanted (indeed, had simply renewed Gelin's existing policy) and could not be held liable for lack of precognition.

Three facts dominate this case. First, Gelin never told anyone, not his original agency, not Wenk, and not American Eagle, that he wanted insurance that would cover operating the plane in Alaska. Second, the fatal trip in July 1995 was Gelin's first to Alaska, so even if Wenk and American Eagle had insisted in the fall of 1994 that Gelin answer all questions on American Eagle's form, the answers would not have led anyone to think that Gelin needed coverage for Alaska. A third fact, not in the record in so many words but inferable from it, is that coverage for Alaska would have been costly. American Eagle does not underwrite flights west of 153˜west longitude, and King Salmon is farther west than that. Coverage would have had to be obtained from a different insurer, at some marginal cost. Since Gelin did not use this plane in Alaska (until the fatal trip in July 1995), a sensible insurance agency would not have arranged for its client to bear that extra expense.

Nothing more need be said to explain why the district court's decision is correct. None of Business Flying's arguments about Wenk's expertise and the duties of an insurance agent under Wisconsin law (which controls under the *Erie* doctrine) avoids the facts that Gelin not only did not alert anyone to the need for coverage in Alaska but also would not have done so, had Wenk been persistent. Insurance agents must follow instructions, but even agents holding themselves out as experts are not charged with prescience. See *Nelson v. Davidson*, 155 Wis.2d 674, 456 N.W.2d 343 (1990); *Production Credit Ass'n v. Gorton Farms*, 216 Wis.2d 1, 10, 573 N.W.2d 549, 553 (Wis.App.1997) (an agent's "duty is to follow instructions. But first the broker must know what the instructions are."). Nothing in the record suggests that in September 1994, when filling out American Eagle's form, Gelin himself foresaw the trip to Alaska in July 1995, and Wenk cannot elicit from a client facts the client himself does not know. Wisconsin does not require an insurance agent to prod every client about contingencies that could come to pass, to discuss the insurance available for those events, and to insist that clients plan trips farther in advance. That would be a costly and usually unproductive exercise, and clients would be forced to bear those pointless costs. It is enough in Wisconsin for the agent to arrange for the coverage the client actually requests.

Wisconsin requires insureds to read their own policies. This policy says as clearly as imaginable that flights within Alaska are not covered. Gelin had only to read it before deciding what services to purchase from Wenk, and for that matter before setting out for Alaska. Perhaps he did so and decided to fly uninsured rather than incur the delay and expense of obtaining coverage. But whether or not Gelin read the policy, Wenk cannot be held liable for failing to anticipate that Gelin would fly into territory outside the policy's geographic coverage.

AFFIRMED