Robert Schmitz,
Plaintiff-Appellant,

Balboa Insurance Company, Equicredit
Corporation of America, and Fairbanks
Capital Corporation, Subrogated-Plaintiffs,

v.

Fire Insurance Exchange d/b/a Farmer's
Insurance Group, Defendant-Respondent,

Karen L. Paladino and Fireman's Fund
Insurance Company, Defendants.

Court of Appeals

*No. 04–1545. Submitted on briefs January 20, 2005.—Decided
March 9, 2005.*

2005 WI App 76

(Also reported in 696 N.W.2d 238.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel S. Draper* and *Joseph*

*M. Cardamone III*, of *Gagliardi, O'Brien, Braden, Olson & Capelli* of Lake Geneva and Salem.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard E. Schmidt* and *Amy E. Wochos* of *Piper & Schmidt* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J. Robert Schmitz appeals from a summary judgment granted in favor of Fire Insurance Exchange (FIE), d/b/a Farmer's Insurance Group. The trial court determined that FIE had properly cancelled Schmitz's homeowner's insurance policy by mailing a cancellation notice at least ten days prior to a fire at Schmitz's residence.

¶ 2. At issue is the language in WIS. STAT. § 631.36(2)(c) (2003–04)[1] which provides that a termination of a new policy that has been in effect less than sixty days at the time the notice of cancellation is mailed or delivered is not effective "until at least 10 days after the 1st class *mailing or delivery* of a written notice to the policyholder." (Emphasis added.) Schmitz, a new policyholder, contends that the language of § 631.36(2)(c) is ambiguous as to whether the effective cancellation date is measured from the time of mailing or the time of delivery. Schmitz argues that the trial court erred by measuring the effective date of cancellation from the date of the mailing of the cancellation notice rather than from the date of Schmitz's receipt of the notice.

¶ 3. We conclude that WIS. STAT. § 631.36(2)(c) clearly contemplates two separate and distinct forms of notifying an insured of cancellation—either by postal mailing or by a form of personal delivery other than

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

mailing. Because FIE informed Schmitz of its cancellation by mail, we conclude that the trial court correctly measured the effective date of cancellation from the date of mailing. We affirm the judgment.

## BACKGROUND

¶ 4. Schmitz resided at W1389 West Post Road, Pell Lake, Walworth County, Wisconsin, but maintained a mailing address of P.O. Box 323, Genoa City, Wisconsin. On November 9, 2001, Schmitz met with FIE insurance agent Karen L. Paladino and filled out an application for a homeowner's insurance policy with FIE. Paladino advised Schmitz that FIE might deny his application because Schmitz had a prior claim on a previous policy. Nonetheless, Paladino issued Schmitz an FIE binder for coverage, and Schmitz paid for two months of premiums.

¶ 5. At the time of his application, Schmitz lived in an area that did not have home delivery of mail. Although Schmitz's physical address and the residence to be insured were located on West Post Road in Pell Lake, Schmitz provided Paladino with his mailing address at a P.O. Box in Genoa City. Paladino wrote Schmitz's mailing address on his application but failed to input the mailing address on the computer. As a result, when the application on the computer was transmitted to FIE's underwriting department, it did not recite Schmitz's Genoa City mailing address.

¶ 6. On November 12, 2001, FIE informed Paladino that it was declining to insure Schmitz's property. On November 19, 2001, FIE issued two mailings to Schmitz. One was a letter dated November 19, 2001, which advised Schmitz, "We are sending the enclosed refund check because your insurance company, or companies, has cancelled your policy, or policies, and your account is closed." The second, also dated November 19,

564

2001, was a Notice of Cancellation reciting a cancellation date of December 6, 2001. Both the notice and letter were addressed to Schmitz's physical address in Pell Lake, not his mailing address in Genoa City.

¶ 7. During discovery, Schmitz produced an envelope which he recalled contained a letter from FIE informing him that his insurance had been cancelled.[2] This envelope carries a postmark date of November 27, 2001. Affixed to the envelope is a change of address sticker dated December 1, 2001, indicating an incorrect mailing address in Genoa City. Also affixed to the envelope is a second change of address sticker dated December 4, 2001, showing Schmitz's correct mailing address in Genoa City. According to an affidavit of the Genoa City Postmaster, when a letter is mailed to a Genoa City address, it is processed through the Genoa City Post Office. If there is a change of address on file, the letter is sent back to the Milwaukee Post Office for processing. According to the postmaster, the second change of address label dated December 4, 2001, indicates that the letter was processed at the Milwaukee Post Office and forwarded to Genoa City for delivery to Schmitz's correct address on the date indicated, December 4, 2001. Schmitz's recollection was that he received this mailing on December 8, 2001, or December 10, 2001.

---

[2] There is some dispute as to whether the cancellation letter or the notice was in the envelope produced by Schmitz. Schmitz represents on appeal that the envelope contained the cancellation letter with the refund check. FIE contends that in the trial court Schmitz represented that he was unsure whether the envelope contained the cancellation letter or the Notice of Cancellation. However, the uncertainty on this point is of no consequence since both mailings served to inform Schmitz that his insurance policy had been cancelled. Therefore, we will refer to the contents of the envelope as the "cancellation notice," regardless of the actual contents.

¶ 8. On December 17, 2001, a fire occurred at Schmitz's residence. Schmitz contacted Paladino who informed him that he did not have a valid homeowner's insurance policy with FIE. As a result, Schmitz filed the instant action against FIE, Paladino and Paladino's liability insurer alleging breach of contract, bad faith, negligence and asserting a claim for punitive damages. FIE defended on the grounds that Schmitz's policy had been effectively cancelled, at the latest, as of December 14, 2001, ten days after the Milwaukee Post Office had mailed the envelope advising Schmitz of the cancellation. Since the fire occurred on December 17, 2001, FIE denied coverage.

¶ 9. Schmitz and FIE filed cross-motions for summary judgment. Following oral argument, the trial court found that Wis. Stat. § 631.36(2)(c) is unambiguous and that the date of mailing was the proper date from which to compute the ten-day period under the statute. Since the summary judgment evidence unequivocally demonstrated that FIE gave notice of cancellation by the first class mailing from the Milwaukee Post Office on December 4, 2001, the court further held that the policy was cancelled as of December 14, 2001, three days before the fire at Schmitz's residence. Therefore, the court granted summary judgment to FIE and dismissed Schmitz's complaint. Schmitz appeals.

## DISCUSSION

¶ 10. This case was presented to the trial court on cross-motions for summary judgment.[3] Our review of a trial court's grant of summary judgment is de novo. *See*

---

[3] FIE argues that because Schmitz filed a motion for summary judgment he cannot now argue on appeal that a material issue of fact exists as to when he received the notice of cancella-

*Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). This appeal turns on the interpretation of Wis. Stat. § 631.36(2)(c), a matter that we also decide de novo. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148 (1996) (statutory construction involves a question of law that we review de novo).

¶ 11. Wisconsin Stat. § 631.36 governs the termination of an insurance policy by an insurer. At issue in this case is subsec. (2)(c), which addresses the midterm cancellation of new policies that have been in effect less than sixty days at the time the notice of cancellation is mailed or delivered. Subsection (2)(c) provides that "[n]o cancellation under this paragraph is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder." The purpose of the notice provisions in § 631.36 is to protect insureds from unwittingly being left without coverage. *Hoeft v. United States Fire Ins. Co.*, 153 Wis. 2d 135, 142, 450 N.W.2d 459 (Ct. App. 1989) (addressing the purpose of nonrenewal notice requirements in § 631.36).

¶ 12. Schmitz contends that the trial court erred in finding that the FIE policy was cancelled as of December 14, 2001, ten days after the Milwaukee Post Office mailed the cancellation notice to Schmitz's correct Genoa City address. Schmitz argues that Wis. Stat. § 631.36(2)(c) is ambiguous in its use of the terms "mailing or delivery." Schmitz reasons that because ten days had elapsed between the date of original mailing

tion. However, Schmitz's argument that the trial court erred in granting summary judgment to FIE is separate from his argument that he was entitled to summary judgment. Nevertheless, based on our construction of Wis. Stat. § 631.36(2)(c), the date Schmitz received the notice is irrelevant.

(November 27) and the earliest date of delivery according to his recollection (December 8), the effective date of the cancellation has to be measured from the date of delivery. That would place the earliest effective date of the cancellation at December 18, 2001, the day after the fire.

¶ 13. In effect, Schmitz is arguing that his receipt of the mailing is the controlling date from which to measure the statutory ten days. This argument assumes that the "delivery" language of the statute is linked to the predicate act of "mailing" under the statute. This case turns on whether this assumption is correct.

¶ 14. In construing the language of WIS. STAT. § 631.36(2)(c), we attempt to give effect to the legislative intent, based on the statute's language, scope, history, context, subject matter, and purpose. *See Hughes*, 197 Wis. 2d at 978. We ascertain these factors by examining the text and structure of the statute, rather than extrinsic sources, unless the statute is ambiguous. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 48, 271 Wis. 2d 633, 681 N.W.2d 110.

> [S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning."

*Id.*, ¶ 46 (citations omitted).

¶ 15. We begin by noting that WIS. STAT. § 631.36(2)(c) contemplates the giving of notice of cancellation by "mailing *or* delivery." (Emphasis added.) The legislature's use of the word "or" is important. "Or" is defined, in part, as "used as a function word to indicate an alternative." WEBSTER'S COLLEGIATE DICTIONARY 817 (10th ed. 1997). Since "delivery" follows the term "mailing" in the statute, it follows that the term "delivery" represents an alternative to "mailing." Thus, we conclude that the legislature contemplated two separate and distinct forms of alerting an insured to the cancellation of a policy—either posting the notice via first class mail, or delivering it by some method other than postal mailing, i.e., personal delivery via an insurance agent or courier.

¶ 16. If we were to adopt Schmitz's interpretation that "delivery" equates with receipt of a mailed cancellation notice, we would render the use of the term "mailing" meaningless, since "delivery" of the mailing would always then be the benchmark for measuring the ten-day period under the statute. *See State ex rel. Kalal*, 271 Wis. 2d 633, ¶ 46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.") Moreover, if we adopted Schmitz's concept of "delivery" and also attempted to give meaning to the "mailing" provision of the statute, we would create havoc, confusion and uncertainty as to which event—the mailing or the receipt of the notice—should control in a given case. We do not construe statutes so as to produce such a confusing, absurd and unreasonable result. *See id.* (statutes are interpreted to avoid absurd and unreasonable results).[4]

---

[4] Such an interpretation would also create confusion under other statutes that recite "mailing or delivery" provisions. *See,*

¶ 17. While at first blush the use of the terms "mailing" and "delivery" might suggest that the statute is limited only to the use of the postal mails, when read in context and with the purpose of the statute in mind, we hold that the terms address different modes of notifying an insured of cancellation—either by postal mailing or by some form of delivery other than the postal mails.

¶ 18. Schmitz relies on *Seeburger v. Citizens Mutual Fire Insurance Co. of Wisconsin*, 267 Wis. 213, 64 N.W.2d 879 (1954), and *Benefit Trust Life Insurance Co. v. Office of the Commissioner of Insurance*, 142 Wis. 2d 582, 419 N.W.2d 265 (Ct. App. 1987), in support of his argument that we should measure the running of the ten-day period from the date of receipt of the cancellation notice. We discuss each case in turn.

¶ 19. In *Seeburger*, the policy included a termination provision in accord with the standard fire policy mandated by Wis. Stat. § 203.01(1) (1953), which required "five days' written notice of cancellation." *Seeburger*, 267 Wis. at 216. When the insured failed to pay an annual premium, the insurer mailed three successive notices of cancellation to the insured reciting a termination date of February 7, 1950. *Id.* at 216–17. Two of these notices were mailed more than five days before the termination date while the third notice was mailed after the termination date. *Id.* The third notice was also mailed to the insured's mortgagee. *Id.* at 217. The supreme court held that the first two cancellation notices complied with the five-day notice provision of

---

*e.g.,* Wis. Stat. § 867.02(2)(i) (entitled *"Mailing or delivery required,"* which requires a petitioner in a summary assignment probate proceeding to "mail or deliver" a copy of the summary assignment order to all interested parties).

the statutory standard fire policy, *id.* at 216, and therefore were "effective to terminate the rights of the [insured]." *Id.* at 218.

¶ 20. The supreme court next addressed whether the insured's mortgagee had received effective notice of the cancellation. The court held that the first two mailings did not terminate the mortgagee's coverage because those notices were not mailed to the mortgagee. *Id.* at 218–19. The court next noted that the third mailing was mailed to the mortgagee, but the mailing occurred after the effective date of the termination recited in the letter. *Id.* To remedy this problem, the court added five additional days *from the date of the mailing* when computing the effective cancellation date. *Id.* at 220. Because the fire loss occurred after this extension, the court concluded that the mortgagee, like the insured, could not claim coverage under the policy. *Id.* ("The extension of coverage for an additional five days from February 9, 1950, does not enable the plaintiff bank to recover . . . because the fire loss occurred some thirteen months after such extended period of coverage terminated.")

¶ 21. In the course of its discussion, the supreme court made the following statement:

> If the purpose of the five-day-notice provision is to afford the insured, or other loss payee, a reasonable opportunity to obtain other insurance, then the extending of the coverage for such required period, *after receipt of a notice of termination which failed to comply with such time requirement,* will provide such reasonable opportunity to procure other insurance.

*Id.* at 219–20 (emphasis added). Schmitz seizes on the supreme court's use of the word "receipt" in support of his argument that we should likewise use his receipt of

571

FIE's cancellation notice as the date from which to measure the ten-day provisions of Wis. Stat. § 631.36(2)(c).

¶ 22. We reject Schmitz's reliance on this language from *Seeburger* for three reasons. First, the issue in *Seeburger* did not concern a statute using the terms "mailing or delivery" which are the crucial terms at issue in this case. Second, despite the supreme court's use of the word "receipt," the fact remains that the court did not extend the effective date of the cancellation from the date of the mortgagee's receipt of the notice; rather, the court extended the effective date *from the date of the mailing.* Thus, *Seeburger* actually supports our holding that when the postal mails are used to cancel a policy, the event of "mailing," not "delivery," is the proper focus of the inquiry. Third, the supreme court used the word "receipt" in reference to a cancellation notice which was *untimely* under the governing statute. *Seeburger*, 267 Wis. at 220. That is not the situation here since Schmitz received effective and timely notice of the cancellation as measured from the date of mailing, December 4, 2001.

¶ 23. Schmitz also relies on the court of appeals decision in *Benefit Trust*, a case very similar to *Seeburger*. In *Benefit Trust*, the insurer had sent multiple letters notifying the insured of the cancellation. *Benefit Trust*, 142 Wis. 2d at 590. The court of appeals held that the initial letter, while complying with the ten-day notice provisions of Wis. Stat. § 631.36(2)(b),[5] was

---

[5] Subsection (2)(b) of Wis. Stat. § 631.36, which was at issue in *Benefit Trust Life Insurance Co. v. Office of the Commissioner of Insurance*, 142 Wis. 2d 582, 419 N.W.2d 265 (Ct. App. 1987), governs the midterm cancellation of insurance policies generally. Subsection (2)(c) of the statute, which is at issue in this case, governs the cancellation of an insurance policy not previ-

nonetheless of no legal effect because it merely threatened cancellation rather than unequivocally stating that the policy would be canceled. *Benefit Trust*, 142 Wis. 2d at 592. However, the court further held that the subsequent letter did not suffer from this infirmity. *Id.* at 593. But, as in *Seeburger*, the effective date of the cancellation had already passed as of the date the subsequent letter was mailed. *Benefit Trust*, 142 Wis. 2d at 593. Thus, the court employed the same remedy as in *Seeburger*—extending the effective date of the cancellation to ten days from the mailing of the letter. *Benefit Trust*, 142 Wis. 2d at 585, 594.

¶ 24. In the course of its holding, the *Benefit Trust* court cited to the "receipt" language used by the supreme court in *Seeburger*. *Benefit Trust*, 142 Wis. 2d at 593. Schmitz again seizes on this language in support of his argument that we must use his receipt of FIE's cancellation notice as the starting date for the running of the ten-day period under Wis. Stat. § 631.36(2)(c). For many of the reasons we have already recited in our discussion of *Seeburger*, we reject Schmitz's reliance on *Benefit Trust*. First, the issue in *Benefit Trust* did not concern any possible dichotomy between "mailing or delivery." Instead the core issue was whether the language of the cancellation notice adequately notified that the insurance had, in fact, been cancelled. Second, as in *Seeburger*, the court of appeals remedied the defect in the second letter by adding the statutory ten-day period to the date of mailing. As we have noted, that action supports our holding in this case that the date of mailing is the proper focus when the postal

ously renewed and which has been in effect less than sixty days at the time the notice of cancellation is mailed or delivered. However, the "mailing or delivery" language of both subsections is the same.

mails are utilized to provide notice of cancellation. Finally, also as in *Seeburger*, the court of appeals fashioned a remedy to correct a defect in an *untimely* notice. Here, as we have already held, the cancellation notice was timely and effective as measured from the date of mailing, December 4, 2001. In summary, neither *Seeburger* nor *Benefit Trust* supports Schmitz's argument.

### *CONCLUSION*

¶ 25. We conclude that the clear language of Wis. Stat. § 631.36(2)(c) addresses alternate methods of providing notice of cancellation to an insured, either by postal mailing or by some other form of delivery. Given that Schmitz does not challenge the trial court's finding that December 4, 2001, is the date of mailing reflected on the second change of address sticker, we uphold the trial court's determination that FIE's notice of cancellation became effective ten days thereafter, December 14, 2001. Since the fire loss occurred thereafter, the court correctly concluded that the FIE policy did not cover the loss

*By the Court.*—Judgment affirmed.